503 So.2d 241 (1987)
James V. BROCATO
v.
MISSISSIPPI PUBLISHERS CORPORATION, d/b/a the Clarion-Ledger/Jackson Daily News, Don Hoffman and Joe Doe and/or Xyz Corporation.
No. 55847.
Supreme Court of Mississippi.
February 18, 1987.
*242 Frank D. Barber, Jackson, for appellant.
W. Scott Welch, III, Luther T. Munford, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellees.
En Banc.
PRATHER, Justice, for the Court:

I.
James V. Brocato filed suit in Hinds County Circuit Court on April 4, 1983, against the appellees alleging libel, invasion of privacy, and negligence per se. Brocato's claims were based on a newspaper article that appeared in the Sunday, April 4, 1982 edition of the Clarion Ledger/Jackson Daily News.
After extensive discovery, appellees filed a motion for summary judgment pursuant to Rule 56, Mississippi Rules of Civil Procedure. Following a hearing on the motion, the trial judge granted summary judgment reasoning that Brocato failed to satisfy the statute of limitations, Miss. Code Ann. § 15-1-35 (1972).[1]
Brocato appeals the dismissal of his libel action[2] assigning as error the following:
(1) The circuit judge erred in finding that the appellant failed to satisfy the requirements of the statute of limitations, Miss. Code Ann. § 15-1-35 (1972).
(2) The circuit judge erred in granting appellees' motion for summary judgment.
We affirm, but on a ground other than the statute of limitations.

II.
Did Brocato satisfy the requirements of Miss. Code Ann. § 15-1-35 (1972), the statute of limitations?
This assignment of error requires an analysis of the interaction between Miss. Code Ann. § 15-1-35 (1972) and Miss. Code Ann. § 95-1-5 (1972). Section 15-1-35 provides:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, and for libels, shall be commenced within one year next after the cause of such action accrued, and not after.
Section 95-1-5 provides in part:
Before any civil action is brought for publication, in a newspaper domiciled and published in this state or authorized to do business in Mississippi so as to be subject to the jurisdiction of the courts of this state, of a libel, or against any radio or television station domiciled in this state, the plaintiff shall, at least ten (10) days before instituting any such action, serve notice in writing on the defendant at its regular place of business, specifying the article, broadcast or telecast, and the statements therein, which he alleges to be false and defamatory.
Section 15-1-35 requires a libel action be filed within one year after the cause of action accrues. Section 95-1-5 requires the plaintiff to give ten days notice to the defendant before a libel action is brought.
In the instant case, the cause of action arose on April 4, 1982, the date of publication of the alleged libelous newspaper article. The libel action was filed exactly one year later, April 4, 1983.[3] The trial judge found Brocato did not comply with the one year statute of limitations because only an eight day notice was given to the appellees prior to the filing of the suit.
On appeal, Brocato argues it was never the intent of the Legislature for § 95-1-5 to be a condition precedent to the proper filing of a suit under § 15-1-35.
*243 Notwithstanding appellant's argument, the language of § 95-1-15 is clear and unambiguous. "Before any civil action is brought for publication ... of a libel ... the plaintiff shall, at least ten (10) days before instituting any such action, serve notice in writing on the defendant... ." When the language of a statute is clear and unambiguous, the statute should be given its plain and obvious meaning. Pinkton v. State, 481 So.2d 306, 309 (Miss. 1985); MISS CAL 204, Ltd. v. Upchurch, 465 So.2d 326, 329 (Miss. 1986).
The Court finds the ten day notice required in § 95-1-5 is clearly a necessary preliminary step to the proper filing of a libel action and that the preliminary step must be satisfied within the statutory limitation period. The Court follows Grenada County v. Nason, 174 Miss. 725, 732, 165 So. 811, 813 (1936) in which we held that a preliminary step must be taken within the statutory period, and likewise also the action must be brought within the statutory period, or else the bar of the statute of limitations is complete.[4]See also, Ross v. Gore, 48 So.2d 412, 415 (Fla. 1950), which treated a similar requirement in a Florida statute as a necessary preliminary step to the proper filing of a libel suit. See generally, B. Sanford, Libel And Privacy § 12.3.3 (1985).

III.
Did the trial judge err in granting appellees' motion for summary judgment?
Rule 56(b) of the Mississippi Rules of Civil Procedure provides, "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."
Rule 56 allows summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Modling v. Bailey Homes & Insurance, 490 So.2d 887, 891 (Miss. 1986); Brown v. Credit Center Inc., 444 So.2d 358, 362 (Miss. 1983).
Brocato, on appeal, argues the summary judgment was improper because there was a genuine issue of material fact regarding whether ten days notice was given to appellees pursuant to Miss. Code Ann. § 95-1-5 (1972).
Because of the peculiar factual situation involved in this case, it is essential for the Court to determine what action constitutes the serving of notice under § 95-1-5, which is silent regarding how notice is to be served.
Rule 5 of the Mississippi Rules of Civil Procedure is generally utilized after a suit has been filed. The official comments to Rule 5 state in part, "This rule presupposes that the court has already gained jurisdiction over the parties." However, this Court finds the mechanics of Rule 5 may also be used in a situation such as the one at bar in which notice is required as a preliminary step to filing a lawsuit. Therefore, this Court holds that the notice requirements of § 95-1-5 should follow the Rule 5 outlines.
M.R.C.P. 5(b) states in part:
Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such attorney unless service upon party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address, or if no address is known, by leaving it with the clerk of the court.... Service by mail is complete upon mailing. (Emphasis added).
Turning our attention back to the motion for summary judgment, we observe that the trial judge granted the motion for *244 summary judgment on the strength of the affidavit of Charles L. Overby, Executive Editor of the Clarion Ledger/Jackson Daily News. In his sworn affidavit, Overby stated, "The letter to me which is attached as Exhibit `A' to this affidavit was served on me Monday, March 28, 1983, by delivery in the United States mail."
The affidavit is clear that Overby received notice on Monday, March 28, 1983. The affidavit is silent, however, regarding when the notice was mailed. If the notice was mailed on or before Friday, March 25, 1983, it would have been timely. If the notice was mailed Saturday, March 26, 1983 or Sunday, March 27, 1983, it would have been too late.
The silence of Overby's affidavit as to the date of the postmark evidencing mailing raises a genuine issue of material fact on the face of the affidavit. For that reason the Court finds the granting of appellees' motion for summary judgment on this ground was improper.

IV.
Defendants moved in the trial court for summary judgment on several alternative grounds, including the official proceedings privilege. The trial court reached only the notice requirement previously discussed in Section III in dismissing the case. Defendants on appeal are, however, entitled to raise any alternative ground based on the pleadings in the court below which would support the judgment here.
As this Court noted in Lee v. Memphis Publishing Company, 195 Miss. 264, 14 So.2d 351, 353 (1943):
[I]f the judgment of dismissal was correct on any ground raised by the plea, the same will be affirmed.
See also, Briggs v. Benjamin, 467 So.2d 932, 934 (Miss. 1985); Huffman v. Griffin, 337 So.2d 715, 723 (Miss. 1976).
More recently in Hickox v. Holleman, 502 So.2d 626 (Miss. 1987) this Court held, "An appellee is entitled to argue and rely upon any ground sufficient to sustain the judgment below." Id., slip op. at 635.
This practice is also recognized by federal courts in their application of the Federal Rules of Civil Procedure. As noted in Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2716, p. 658 (1983):
The appellate court does not have to affirm a decision on a Rule 56 motion for the same reasons that persuaded the court below to grant the motion. On the contrary, it can find another ground for concluding that the movant is entitled to judgment as a matter of law and ignore any erroneous basis that the district court may have employed.
In addition, no cross-appeal is required. Wright, Miller & Kane, supra.
The official proceedings privilege is stated in Restatement (Second) of Torts § 611 (1977) as follows:
The publication of defamatory matter concerning another in a report of an official action or proceedings or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported. (Emphasis added).
See also 50 Am.Jur.2d Libel and Slander, § 263 (1970).
The portions of the news article about which Mr. Brocato complains are based upon a document prepared by Walter Brown and Larry Burris, chairman and executive director respectively of the Mississippi Ethics Commission, and given by them to the Legislature. Without naming names, the document gives what it calls "Examples of Typical Complaints" handled by the Commission.
The Court holds the drafting and publication of the "Examples of Typical Complaints" by the Chairman of the Mississippi Ethics Commission and its executive director was an "official action." As noted in Restatement Comment d:
The filing of a report by an officer or agency of the government is an action bringing a reporting of the governmental report within the scope of the privilege.
*245 Because the Ethics Commission's creation and distribution of the "Examples of Typical Complaints" was an "official action," the newspaper had a privilege to republish the statements found in that report. The question, therefore, is whether or not the statements published by the newspaper were an accurate and complete description of the report.
The record in this case reflects that Paragraph (a)(3) of the document refers to an application which Mr. Francis Geoghegan, then executive head of the State Budget Commission, filed in April 1980 seeking a $40,000 loan from the Veterans Farm and Home Board, whose Director was then Mr. Brocato.
When put together with these admittedly true facts, the Ethics Commission document reads as follows:

Department Heads of two state agencies, one major [Budget Commission] and the other significant [Veterans Farm and Home Board] state agency. Matter came to the attention of the Commission as a result of PEER report. Involved improper use of influence to secure favorable action by second state agency [VFHB] and the giving of false statement in an application which were known to the second state agency head [Mr. Brocato]. Ethics Commission informally influenced the resignation of both officials [Mr. Geoghegan and Mr. Brocato] and subsequently terminated the proceedings as having arrived at a satisfactory and responsible disposition.
In his deposition, Mr. Brocato admitted that the Mississippi Ethics Commission investigated the Geoghegan loan in 1981, and that on June 24, 1981 the Board of Directors of the Veterans Farm and Home Board requested Mr. Brocato's resignation.
Mr. Brocato's complaint alleges that the following statements in the April 4, 1982 news article are false and defamatory:
The document also says the "false statements" contained in Geoghegan's April 1980 application for a $40,000 loan from the State Veterans Farm and Home Board were known to be false by then Board Director James Brocato. Brocato later resigned under pressure from the Board.
* * * * * *
Brocato, the Farm and Home Board Director, resigned in June 1981 under pressure from members of the Board.
* * * * * *
The document also says Brocato knew of the "false statements" by Geoghegan in his application for the loan.
"The Ethics Commission informally influenced the resignation of both officials and subsequently terminated the proceedings as having arrived at a satisfactory and responsible disposition," the Commission document states.
Only one paragraph of the "Examples of Typical Complaints" pertains to the Geoghegan-Brocato investigation. That paragraph is both accurately and completely described in the news article. That is sufficient to bring the article wholly within the privilege of the Restatement (Second) of Torts § 611, the official proceedings privilege. Mr. Brocato concedes that the other reported facts are true and that he did resign under pressure from the Veterans Farm and Home Board.
It is worth noting that the description is also a "fair abridgment." The article clearly states that the Ethics Commission document did not "name names." The article expressly includes Mr. Brocato's response to the charges found in the Ethics Commission document. When an article sets out the plaintiff's denial of the official charges against him, the article will be held to be a fair report and judgment will be granted for the defendant. Brandon v. Gazette Publishing Co., 234 Ark. 332, 352 S.W.2d 92, 95 (1961) (governor's report).
Because the defendants' article was an admittedly accurate and complete description of this official action, there is no genuine factual issue remaining, merely a question of law. As this Court recently held in Adams v. Fred's Dollar Store of Batesville, 497 So.2d 1097, 1100 (Miss. 1986), "[W]here the facts are not in dispute the [issue] becomes a question of law for the *246 trial judge." See also, Graves v. Massey, 227 Miss. 848, 853, 87 So.2d 270, 271 (1956).
This Court holds that the defendants have sustained their burden of proving that they are entitled to summary judgment as a matter of law on the alternative ground of an admittedly fair and accurate reporting of an official proceeding.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ., dissent.
DAN M. LEE, Justice, dissenting:
The Court today holds that our requirement that a notice be given ten days in advance of filing suit against a newspaper for defamation, Miss. Code Ann. § 95-1-5 (1972), is in the nature of a second statute of limitations. I am not in total accord with this holding. However, I dissent not from this holding but from what I view as a decision by this Court to unnecessarily expand the scope of M.R.C.P. 56 by upholding the trial court's grant of summary judgment on alternative grounds not relied on by the court below.
In my view, the Court correctly holds that a factual issue remains in this case as to whether the notice requirements of Miss. Code Ann. § 95-1-5 were met, thereby rendering erroneous the summary judgment granted for the reason stated by the trial court. The Court goes on to hold, however, that summary judgment, while erroneous on one ground, was nonetheless proper on a totally different ground which was merely raised and specifically not ruled on in the trial court and was not the subject of a cross-appeal in this Court.
With this I cannot agree. Summary judgment under M.R.C.P. 56 should not provide a buffet platter from which this Court might select the most palatable dish to stuff a litigant's hopes of a trial down his throat.
With but one exception which I will note later, the Court adequately states the facts and I shall not repeat them here.
The "official proceedings privilege" is the dispositive alternative ground for affirming this case, we are told. This theory was advanced below, but was not addressed by the trial court.
I believe that alternative grounds for upholding grants of summary judgments should be found only in the most compelling of circumstances, and this case does not present such. However, even assuming we should pursue alternative theories for curtailing litigation at this stage with vigor, there still exist questions of fact relating to the applicability of the privilege relied on by the appellants which I think should prevent us from affirming this case.
There is support for the proposition that an appellate court in review of a lower court's grant of summary judgment may find other grounds "for concluding that the movant is entitled to judgment as a matter of law and ignore any erroneous basis that the (lower court) may have employed." 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716 at 658 (1983); see e.g., Herm v. Stafford, 663 F.2d 669, 684 (6th Cir., 1981).
In Briggs v. Benjamin, 467 So.2d 932, 942 (Miss. 1985), this Court used just such a rationale to affirm the erroneous grant of summary judgment in the trial court.
However, given our precedent and the nature of summary judgment, I think the instances where this Court should snatch a trial away from a litigant based on some ground not relied on by the trial court in granting summary judgment should be exceedingly rare.
First, the paper here did not cross-appeal. Our precedent is firm that this Court will not consider errors raised by an appellee without the filing of a cross-appeal. Merchants Fertilizer & Phosphate Co. v. Standard Cotton Gin, 199 Miss. 201, 23 So.2d 906 (1946). See also, Dukes v. Sanders, 239 Miss. 543, 125 So.2d 294 (1961); Aetna Life Ins. Co. v. Thomas, 166 Miss. 53, 146 So. 134 (1933).
*247 Wright, Miller and Kane suggest that a cross-appeal may not be necessary, but I would require it in all but the clearest of cases. I would require a cross-appeal because of the nature of the summary judgment procedure.
As we said recently in Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986), citing Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983):
The trial court must review carefully all of the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
The burden of demonstrating that no genuine issue of fact exists is on the movant. The opposing party "should be given the benefit of every reasonable doubt." Id. at 362. "If there should be error ... it should be in denying the summary judgment and in favor of a full live trial." Id., at 363 (quoting 6 Moore's Federal Practice § 56.-15 [1.-2] p. 56-435 (1982). And, though they may be appropriate in the right cases, summary judgments "should be granted with great caution." Id. at 363. (emphasis added)
Our adherence to the requirement that the appellee file a cross-appeal, and our insistence that summary judgment be cautiously and sparingly applied I think requires that we not seek an alternative basis for affirming the grant of summary judgment except where a cross-appeal is taken or where dismissal is warranted under Rule 12(b), in that "there (appears) to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim." Comment to Rule 12(b)(6).
However, even if the Court does not agree with me to limit the reach of this Court in finding alternative grounds for affirming the grant of summary judgment below, this case does not appear to be an appropriate one for finding an alternative ground for affirmance.
When summary judgment is granted on one issue, the appellate court may not extend the judgment to another issue under the guise of affirming the "result below" when the effect is to preclude the losing party from disputing facts material to the claim.
Heirs of Fruge v. Blood Servs., 506 F.2d 841 (5th Cir.1975); C. Wright, A. Miller & M. Kane, supra, § 2716 at 661.
Here I have basically two concerns.
First, neither the appellant nor the majority of the Court satisfy my concern with whether this report should be an "official action" which may be published under privilege.
My research has not revealed a case where this Court has recognized a newspaper's privilege to publish official reports. The newspaper looks to § 611 of the Restatement (Second) of Torts, which states:
The publication of defamatory matter concerning another in a report of an official action or proceedings or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported. (emphasis added).
In comment a to § 611, cited by the newspaper, it is noted:
The basis of this privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings. (emphasis added)
The privilege seems aimed at protecting reports of public information.
Comment d to § 611, also states "[i]t is not clear whether the privilege extends to a report of an official proceeding that is not public or available to the public under the law."
In Medico v. Time, Inc., 509 F. Supp. 268 (E.D.Penn. 1981), affirmed, 643 F.2d 134 (6th Cir.1981), the court held that FBI files not intended to be made public were nonetheless *248 subject to the official proceedings privilege. However, there was nothing in that case that indicated the records were legally required to be kept confidential, which may have been required here.
Even if this Court would hold that nonpublic documents are subject to the privilege, however, then there may yet be an issue of fact needing resolution as I discuss below.
On the other hand, if this Court holds that nonpublic actions or reports are not subject to the privilege, then there would not appear to be sufficient factual development in the record to allow this Court to determine whether the document in issue should be considered public (and therefore privileged), or non-public and therefore not subject to the privilege.
The Ethics Commission by law is required to report its investigative findings to the Attorney General and the appropriate district attorney for possible prosecution. Miss. Code Ann. § 25-4-21(e)(iii) (Supp. 1985). Other than these instances, commission proceedings are to be kept confidential. Miss. Code Ann. § 25-4-23 (Supp. 1985).
It would seem then, that any reports of investigations are to be considered nonpublic.
The majority does not make clear that the report in question was prepared at the request of Senator Martin Smith, the Chairman of the Mississippi Senate Judiciary Committee, at a time when the Ethics Commission was being reviewed under the auspices of sunset legislation.
Parts of Senator Smith's deposition were called to the trial court's attention as part of the newspaper's motion for summary judgment. If the report was intended to be public, it is far from clear from Smith's statements. Smith stated that he requested a report but did not intend for the Commission to violate confidentiality requirements. However, he also stated that he knew of no one other than himself who had access to the report or knowledge of its contents. It is not clear whether the report was ever discussed publicly.
This particular report may not violate confidentiality requirements and therefore could be considered a public document; but whether the document should be considered a public or non-public document would seem on this record to be a factual question needing resolution, or at least further development, before Brocato is denied a trial.
Based on the considerations mentioned above, I believe that for this Court to make determinations concerning the applicability of the privilege to this document is premature. This seems doubly true in light of the question of whether this privilege may provide an alternative basis for affirming a summary judgment.
However, even assuming that the Ethics Commission document in question falls within the "official action or proceeding" privilege, I believe there is yet a genuine issue of material fact preventing grant of summary judgment.
The privilege only attaches to public or official reports which are accurately and completely reported. Restatement (Second) of Torts § 611. This of course requires some type of factual determination.
This factual determination may be the duty of the trial court in the first instance because of its responsibility to determine the applicability of the privilege, see Restatement (Second) of Torts § 619. However, in comment a to § 619 it is said:
If the facts (showing the privilege) are in dispute, the jury is called upon to consider the evidence and pass upon the issues thus raised. It is for the court, however, to decide whether the facts found by the jury made the publication privileged or to instruct the jury as to what facts they must find in order to hold the publication privileged.
Thus, the question of whether the report is accurate and fair may be a question for the jury. In comment f to § 611 of the Restatement it is said when a report is accurate and complete or a fair abridgment.
The reporter is not privileged under this section to make additions of his own that would convey a defamatory impression, *249 not to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.
In my mind, the intent of comment "f" is to exclude from the privilege not only those additions which themselves are defamatory, but those publications which, while based on a public report, include additional information giving to the report a tone which the report alone does not contain.
Thus additions to a report made by the publisher may negate the privilege. See e.g., Embers Supper Club, Inc. v. Scripps-Howard Broadcasting Co., 9 Ohio St.3d 22, 457 N.E.2d 1164 (1984), cert. denied 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 875 (1984) (statutory privilege to report contents of a warrant not applicable because the publication included references to illegal operations which were not a part of the official records). And in Illinois it is held that where a summary of an official report carries a "greater sting," amplifying the libelous effect, the summary is unfair. See Brown & Williamson v. Jacobson, 713 F.2d 262 (7th Cir.1983) (interpreting Illinois law). These issues appear to present factual questions which could better be left to a jury.
The fact that any additions may have been accurate does not necessarily mean the publication was fair.
In my view, whether the paper added information to the article conveying a defamatory impression or whether additions to the article impute corrupt motives is a factual question which we should not attempt to resolve.
Mississippi does not recognize libel by innuendo. See Ferguson v. Watkins, 448 So.2d 271 (Miss. 1984). However, here the cause of action is not based on libel by innuendo. Brocato alleges that the published report that he knew of false statements in a loan application is not true. Any innuendo in this case would seem to go only to applicability vel non of the privilege, Brocato would still be required to prove the falsity of the statement.
For the reasons stated above, I would agree that summary judgement was erroneously granted on the basis of the statute of limitations. However, I would remand and not decide this case on any alternative theory since there was no cross-appeal and there is no clear disposition under what would amount to a failure to state a claim upon which relief could be granted.
HAWKINS, P.J., and GRIFFIN, J., join in this opinion.
NOTES
[1] Amendments to § 15-1-35 became effective July 1, 1983, after this suit was filed.
[2] Brocato does not appeal the dismissal of his actions for invasion of privacy and negligence per se.
[3] See M.R.C.P. 6(a) for the method of computing time under the statute of limitations.
[4] In Ethridge v. North Mississippi Communication, Inc., 460 F. Supp. 347, 348 (N.D.Miss. 1978) the Federal District Court treated Miss. Code Ann. § 95-1-5 (1972) as a necessary preliminary step. On motion for summary judgment, the court found the plaintiff had not given the ten day notice required by § 95-1-5 and that the motion was well taken unless the alleged libelous article could be classified under one of the exceptions enumerated in § 95-1-5.