Douglas Randy PANNELL; Rhonda Pannell, and Robin Pannell, Plaintiffs,

v.

ASSOCIATED PRESS, George Dale, Journal Publishing Company d/b/a Northeast Mississippi Daily Journal, and Memphis Publishing Company d/b/a Memphis Commercial Appeal, Defendants.

No. EC88–48–S–D.

United States District Court, N.D. Mississippi, E.D.

Aug. 4, 1988.

Jim Waide, Tupelo, Miss., for plaintiffs.

William J. Threadgill, Lauren J. Hutchins, Threadgill, Smith, Sanders & Jolly, Columbus, Miss., Richard N. Winfield, Rogers & Wells, New York City, for defendant Associated Press.

Randall D. Noel, S. Russell Headrick, Armstrong Allen Prewitt Gentry Johnston & Holmes, Memphis, Tenn., Bruce W. Sanford, Leonard H. Freiman, Douglas E. Lee, Baker & Hostetler, Washington, D.C., for defendant Memphis Pub. Co.

James Hugh Ray, Thomas A. Wicker, Holland, Ray & Upchurch, P.A., Tupelo, Miss., for defendant Journal Pub. Co.

John Kitchens, Asst. Atty. Gen., Attorney General's Office of state of Miss., Jackson, Miss., for defendant George Dale.

## OPINION

SENTER, Chief Judge.

This cause comes before the court on motion of the plaintiff to remand, on motion of defendant George Dale to dismiss, and on separate motions of defendants Associated Press, Memphis Publishing Company, and Journal Publishing Company for summary judgment.

### FACTS

On November 11, 1987, the *Commercial Appeal* (Memphis Publishing Company) and the *Northeast Mississippi Daily Journal* (Journal Publishing Company) published articles based upon a wire report from the Associated Press. The article indicated that Ron Hanna, Director of the License Department of the State Insurance Commission, had stated that Douglas Randy Pannell's license to sell insurance had been revoked or suspended. On January 22,

1988, Douglas Randy Pannell and his daughters, Rhonda Pannell and Robin Pannell, filed this action. The complaint alleges that Commissioner of Insurance George Dale had committed the torts of negligence, misrepresentation of a material fact, libel, and interference with economic relations and violated Pannell's due process rights by releasing incorrect information concerning suspension or revocation of Pannell's license without notice or hearing and by failure to provide Pannell with due process in a suspension of Pannell's license in 1978. The complaint also alleges that the Associated Press, Memphis Publishing Company, and Journal Publishing Company committed the torts of negligent misrepresentation of a material fact, libel, and interference with economic relations. On February 22, 1988, the Associated Press and Memphis Publishing Company separately removed the action to this court under 28 U.S.C. § 1441(c).

## MOTION TO REMAND

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction. 28 U.S.C. § 1441(c).

█ It is well established that each publication of a libel constitutes a separate and independent tort. *Seymour v. A.S. Abell Co.*, 557 F.Supp. 951, 954 (D.Md.1983). *Accord Cianci v. New Times Publishing Company*, 639 F.2d 54, 60–61 (2d Cir.1980); *Dixson v. Newsweek, Inc.*, 562 F.2d 626, 630–31 (10th Cir.1977); *Restatement (Second) of Torts* § 578, Comment b. The failure to join all defendants in the petition for removal is not fatal where removal is based on a separate and independent claim. *See*

*Marsh Investment Corporation v. Langford*, 652 F.2d 583 (5th Cir.1981). The court concludes that removal of this cause as to the Associated Press and Memphis Publishing Company was proper and remand is not warranted on these grounds.

The existence of common questions of law and fact convinces the court that it should retain jurisdiction over the claims against Journal Publishing Company. *Lemke v. Saint Margaret Hospital*, 552 F.Supp. 833 (N.D.Ill.1982). The state law claims against Commissioner George Dale and the defenses against those claims raise significantly different legal questions. Those claims will be remanded to the Circuit Court of Lee County.[1]

## MOTIONS FOR SUMMARY JUDGMENT

Because this cause comes before the court under Fed.R.Civ.P. 56, the court must examine each issue in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a factfinder to find for that party." *Phillips v. OKC Corp.*, 812 F.2d 265, 273 (5th Cir.1987). A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

### Libel

Miss.Code Ann. § 95–1–5(1) requires that "*[b]efore* any civil action is brought for publication ... of a libel ... the plaintiff *shall*" demand retraction. Miss.Code Ann.

---

1. Both of plaintiffs' due process claims against Commissioner George Dale must be dismissed. The claim for a violation occurring in 1978 is barred by the statute of limitations. *Hanner v. Mississippi*, 833 F.2d 55, 59 (5th Cir.1987). The claim for communication of stigmatizing information is a claim for defamation alone and is not cognizable under the fourteenth amendment. *Paul v. Davis*, 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1164–66, 47 L.Ed.2d 405 (1976). The complaint fails to state a valid claim for deprivation of due process.

§ 95–1–5(1) (emphasis supplied). This section, according to the Mississippi Supreme Court, "is clear and unambiguous." *Brocato v. Mississippi Publishers Corp.*, 503 So.2d 241, 243 (Miss.1987). The rules of statutory construction applied by Mississippi courts provide that "[w]hen the language of a statute is clear and unambiguous, the statute should be given its plain and obvious meaning." *Id.* A plain and unambiguous statute "must be construed to mean what it says." *First National Bank of Canton v. Canton Exchange Bank*, 247 Miss. 757, 156 So.2d 580, 583 (1963). The Mississippi Supreme Court has also stated:

> [I]t is a well recognized principle of law in this State that ambiguity must exist in the language used by the Legislature in a statute before a resort will be had to any rules of statutory construction or interpretation. Without ambiguity, the controlling law of this State requires that the Court look no further than the clear language of the statute and apply it.

*Forman v. Carter*, 269 So.2d 865, 868 (Miss.1972).

█ The plain language of the statute requires that plaintiff must serve a demand for retraction *before* any civil action is filed against a newspaper [2] for libel.

The Supreme Court of Mississippi, in *Brocato v. Mississippi Publishers Corp.*, 503 So.2d 241 (Miss.1987), stated that "the ten day notice required in § 95–1–5 is clearly a necessary preliminary step to the proper filing of a libel action." *Accord, Ethridge v. North Mississippi Communication*, 460 F.Supp. 347, 348 (N.D.Miss.1978). Plaintiffs argue that the "effect" of the statute can still be had by this court staying these proceedings, while plaintiffs make a retraction demand. Plaintiffs argue that the retraction statement affects only plaintiffs' claim for punitive damages, not any claim for actual damages.

The defendants suggest that the argument that there should be a stay in the proceedings not only contradicts the precise wording of the statute, but misconceives the statute's fundamental purpose. Plaintiffs' suggestion that "the only effect of the notice requirement is to give the defendants the opportunity to exonerate themselves from a claim of punitive damages" is contradicted by the holdings of several courts that retraction statutes have a much broader purpose and effect.

█ Other jurisdictions with similar retraction statutes hold that a retraction demand is an absolute prerequisite to a cause of action for libel. For example, Florida has a retraction statute similar to Miss. Code Ann. § 95–1–5.[3] Where a plaintiff fails to make a retraction demand prior to the filing of a lawsuit, courts dismiss the lawsuit with prejudice. *Nelson v. Associated Press*, 667 F.Supp. 1468 (S.D.Fla. 1987); *Ross v. Gore*, 48 So.2d 412, 415 (Fla.1950); *Hulander v. Sunbeam Television Corp.*, 364 So.2d 845 (Fla.App.1978); *Orlando Sports Stadium, Inc. v. Sentinel Star*, 316 So.2d 607 (Fla.App.1975).

In *Nelson v. Associated Press*, 667 F.Supp. 1468, the United States District Court for the Southern District of Florida granted summary judgment against the plaintiff because of a failure to comply with a retraction statute similar to the one in the case ·*sub judice*, stating:

> The [retraction] statute is designed to allow the defendant the opportunity to be put on notice so as to take necessary steps *to mitigate potential damages and perhaps avoid precisely the type of litigation now before the court.*

---

**2.** The statute as written applies only to newspapers and radio or television stations. However, the clear intent of the statute is to give a news reporting organization the opportunity to retract and apologize for an injurious statement. The court concludes that this statute also applies to the Associated Press wire service and other forms of news reporting services such as news magazines and cable or satellite news transmissions.

**3.** Fla.Stat. § 770.01 (1976) provides as follows: "Before any civil action is brought for publication or broadcast, in a newspaper, periodical or other medium of a libel or slander, the plaintiff shall, at least five days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he alleges to be false and defamatory."

Similarly, in *Ross v. Gore,* a case cited in *Brocato,* the court stated:

This opportunity, given by the statute, to correct inadvertent errors prior to suit is, in our opinion, no more than fairly and justly commensurate with the opportunity to make the errors. Thus, if by retraction, the damage is completely off-set or so mitigated as not to warrant suit, the newspaper or periodical will oft-times be saved the annoyance and expense of answering the suit, as well as the opprobrium consequent even to an unfounded suit for libel.

48 So.2d 412, 425 (Fla.1950) (en banc).

In *Orlando Sports Stadium, Inc.,* the court found that the plaintiff's failure to make a specific retraction demand prior to the filing of the lawsuit barred his claim for actual damages as well as for punitive damages. The court held that the retraction demand was an essential element of plaintiff's cause of action, saying:

A cause of action must exist and be complete before an action can be commenced or, as sometimes stated, the existence or non-existence of a cause of action is commonly dependent on the stated facts existing when the action was begun. *As a general rule, the plaintiff may not be permitted to cure the defect of non-existence of a cause of action when suit was begun, by amendment of his pleadings to cover subsequently accruing rights.*

*Id.* (Emphasis supplied.) The court dismissed the plaintiff's entire case with prejudice.

In *Hulander v. Sunbeam Television Corp., supra,* the plaintiff had written a letter to the defendant prior to the filing of his lawsuit, but the letter did not specify the allegedly defamatory statements. The plaintiff's entire libel lawsuit was dismissed because the letter did not meet the requirements of the statute. Since the plaintiff had not complied with the statutory requirement of a retraction demand, a

necessary prerequisite to his lawsuit had not been met. The appellate court affirmed the trial court's dismissal of the complaint with prejudice. 364 So.2d at 847.

However, in *Brocato,* the Mississippi Supreme Court cited *Ross v. Gore* solely for the proposition that notice is a necessary preliminary step. 503 So.2d at 243. The cause of action in *Brocato* was held barred because the plaintiff failed to complete the necessary preliminary step within the limitation period. In this cause, the limitation period will not run until November 11, 1988. To dismiss with prejudice, as the Florida cases suggest, would lead to an absurd result. The statute would allow Pannell to wait until November 1, 1988, to file his demand for retraction and still be able to file suit against the media defendants for libel. Defendants here urge the court to dismiss with prejudice on the grounds that the statute intends to allow the defendants to mitigate potential damages. However, defendants were placed on notice of the nature and identity of plaintiffs' claims when the cause was originally filed. This "notice" substantially preceded the statutory deadline. The defendants will receive another notice before the action is refiled. The defendants have suffered no substantial prejudice. This claim will be dismissed without prejudice.

Other Claims Against Media Defendants

The complaint does not state claims of negligent misrepresentations of material fact and interference with economic relations upon which relief can be granted.[4]

The Mississippi Supreme Court in *First Money, Inc. v. Frisby,* 369 So.2d 746, 750 (Miss.1979), adopted the tort of negligent misrepresentation as defined in § 552 of the *Restatement of Torts, Second.* That section states:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false infor-

---

4. The facts alleged by the plaintiff could be read to state a claim for negligent infliction of emotional distress. Such claims in a libel context have been held an impermissible attempt to evade the statutory common law and constitutional safeguards protecting freedom of speech. *See Hustler Magazine v. Falwell,* —— U.S. ——, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). *See also DeMeo v. Goodall,* 640 F.Supp. 1115 (D.N.H. 1986).

mation for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in subsection (3) the liability stated in subsection (1), is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created in any of the transactions in which it is intended to protect them.

■ An action for negligent misrepresentation can only be maintained by persons for whom representations were intended. A review of the comments and illustrations following the Restatement section clearly indicates that no such claim exists for one in the position of the plaintiff. The claim that the law provides would be for defamation, a claim which is barred for the reasons stated above.

Plaintiffs' citation of *Berkline Corporation v. Bank of Mississippi*, 453 So.2d 699 (Miss.1984), is inappropriate. *Berkline* did not deal with an action by the customer concerning whom the bank had made statements on credit-worthiness. Rather, the action was attempted by the creditor who *relied* upon those representations. *Berkline Corporation v. Bank of Mississippi, supra,* at page 702.

■ Similarly, plaintiffs fail to state a claim with regard to interference with economic relationships. The elements for a claim of interference with economic relations are as follows: (1) the existence of a business relationship; (2) knowledge by the interfering party of the business relationship; (3) the interfering party's intentional procurement of a breach of the business relationship; (4) the absence of justification on the part of the interfering party; and (5) the existence of damages proximately caused by the interfering party's conduct. *See* 45 Am.Jur.2d *Interference* § 39. In *Protective Service Life Insurance Company v. Carter,* 445 So.2d 215 (Miss.1983), the Mississippi Supreme Court defined the tort as follows:

A prima facie case of wrongful interference with the contract [or business relationship] is made out if it is alleged (1) that the acts were intentional or willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*Id.* at 217. The plaintiffs have not alleged a claim upon which relief can be granted for interference with economic relationships. Even under the liberal requirements of the Federal Rules of Civil Procedure, malice, intent, knowledge, and other conditions must be averred generally. Fed.R. Civ.P. 9(b). Plaintiffs have not set forth a general averment of "intent".

The alleged interference must be with contracts or economic relations as to which there is reasonable prospect of immediate consummation. *Bailey v. Richards,* 236 Miss. 523, 111 So.2d 402 (1959); *Bush v. Mullen,* 478 So.2d 313 (Miss.1985). There is no authority for a claim of interference with economic relations generally, other than the tort of defamation. As the plaintiffs have failed to comply with the necessary conditions precedent to an action for defamation, the complaint must be dismissed as to the media defendants.

An appropriate order shall issue.