MAXWELL, J., for the Court:
¶ 1. The Mississippi Supreme Court has held pre-suit written notice is a prerequisite to filing a defamation suit against a television station.[1] The aggrieved person must specify in his or her pre-suit notice letter (1) the particular telecast and (2) statements in the telecast alleged to be false and defamatory.[2] Here, Gerald Heath Hudson (Heath) and Arthur Gerald Hudson (Gerald) sued WLOX, a Mississippi television station, for defamation. The Hudsons’ pre-suit notice letter specified two telecasts and alleged WLOX “ran a fictitious story” making three false claims: (1) the Hudsons “were not licensed contractors”; (2) “they had been sued for defective work”; and (8) “they had never been licensed contractors in Mississippi.” Their subsequent complaint brought the same allegations. The jury returned a verdict in favor of WLOX. The Hudsons appeal, arguing the circuit court erred in limiting the jury’s consideration to the three statements. We disagree.
¶ 2. Because notice is a prerequisite to filing suit, and because a required element of notice is the specification of the statements alleged to be false and defamatory, we find the circuit court correctly held the Hudsons were limited to proving the publication and falsity of statements substantially similar to those in their pre-suit notice letter and complaint. We find no error in the trial judge instructing the jury accordingly. Thus, we affirm the jury’s verdict in favor of WLOX.
FACTS AND PROCEDURAL HISTORY
¶ 3. Heath and Gerald, who are father and son, own H & H Construction. In *431 2005, they were framing a house for a relative, Wayne Fairley, when they got into a dispute with Fairley over nonpayment. They did not finish the framing job and filed a construction lien on the house.
¶ 4. A year later, when the Hudsons tried to foreclose on the lien, Fairley contacted a reporter for WLOX and claimed the Hudsons walked off the job after doing poor work. The reporter then called Heath, who told her Fairley’s story was false. On June 21, 2006, WLOX ran a story about Fairley’s dispute with the Hudsons. The report was part of a series exposing the questionable actions by contractors in the aftermath of Hurricane Katrina. After the report, Heath’s wife called the reporter who covered the story, insisting H & H was licensed. The reporter then interviewed Hudson’s wife and re-interviewed Fairley. A second report ran June 26, 2006.
¶ 5. On August 30, 2006, the Hudsons’ attorney sent WLOX a letter “concerning defamatory information, which you telecast ... approximately June l[sic], 2006.” The letter asserted WLOX “ran a fictitious story, claiming that [the Hudsons] were not licensed contractors, that they had been sued for defective work by Mr. Wayne Fairley and that they had never been licensed contractors in Mississippi.” The Hudsons’ attorney requested a copy of the initial report “as well as the retraction, which you ran the following Monday, June 5[sic], 2006.” He also asked WLOX to inform him “as to all reasons why you believe I should not commence suit against you for defamation.... ”
¶ 6. WLOX did not respond to this letter. On October 17, 2006, the Hudsons filed a complaint against WLOX for defamation. The complaint made the same allegations as the pre-suit notice letter: “Defendant, on June 21, 2006, telecast a story, indicating that [the Hudsons] were not licensed contractors, that [they] had been sued for defective work and that [they] had never been licensed contractors in Mississippi.”
¶ 7. The circuit court denied WLOX’s motion for summary judgment, which had argued the Hudsons were limited to proving the falsity of the statements made in the letter. However, it did grant WLOX’s motion in limine, limiting the jury’s consideration to the following statements in the letter and complaint:
“[The Hudsons] were not licensed contractors”;
“they had been sued for defective work by Mr. Wayne Failey”; and “they had never been licensed contractors in Mississippi.”
But the circuit judge separately instructed the jury that:
Plaintiffs are not required to prove that they used the exact language “were not licensed contractors” or “had been sued for defective work by Wayne Fairley.” They are only required to demonstrate that the Defendant made statements substantially the same as saying that Plaintiffs “were not licensed contractors” or substantially the same as saying they “had been sued for defective work by Wayne Fairley.”
(Emphasis added).
¶ 8. The jury returned a verdict in favor of WLOX. The Hudsons filed a motion for a new trial, arguing the trial court erred when it instructed the jury that the Hud-sons’ defamation claim was limited to the statements in the letter. After the trial court denied their motion, the Hudsons timely appealed.
DISCUSSION
¶ 9. The Hudsons’ appeal focuses on the pre-suit notice letter and its effect on their ability to bring a defamation suit against *432 WLOX. The Hudsons argue the circuit court erred in limiting the jury’s consideration to the three statements in the pre-suit notice letter. While the Hudsons acknowledge the supreme court has held notice is required before filing suit, they claim the subsequent lawsuit is not limited to the allegations in the notice. Further, the Hudsons claim the supreme court in Brocato v. Mississippi Publishers Corp., 503 So.2d 241, 243 (Miss.1987) misinterpreted the pre-suit notice statute, Mississippi Code Annotated section 95-1-5(1) (Rev.2004). They argue the statute, correctly interpreted, was intended to bar only the recovery of punitive damages— and not a suit for actual damages — if pre-suit notice is not given.
I. Brocato and the Requirement of Pre-suit Notice
¶ 10. As a preliminary matter, we address the Hudsons’ argument the pre-suit notice statute has been wrongly interpreted. In Brocato, the supreme court held pre-suit written notice is a prerequisite to filing suit, not just to recovering punitive damages. Brocato, 503 So.2d at 243. The Hudsons suggest failure to comply with section 95-1-5(1) was intended to bar punitive damages only, not the ability to bring suit for compensatory damages.[3] The Hudsons acknowledge this court lacks authority to overrule Mississippi Supreme Court precedent. Bevis v. Linkous Const. Co., 856 So.2d 535, 541 (¶ 18) (Miss.Ct.App.2003) (citation omitted). Even so, we are not convinced Brocato was wrongly decided.
¶ 11. In Brocato, the supreme court rejected the plaintiffs argument that the Legislature did not intend section 95-1-5 to be a prerequisite to filing suit. Instead, it found “the ten day notice required in § 95-1-5 is clearly a necessary preliminary step to the proper filing of a libel action.... ” Brocato, 503 So.2d at 243. “When the language of a statute is clear and unambiguous, the statute should be given its plain and obvious meaning.” Id. (citing Pinkton v. State, 481 So.2d 306, 309 (Miss.1985); MISS CAL 204, Ltd. v. Upchurch, 465 So.2d 326, 329 (Miss.1986)). And according to our supreme court, “the *433 language of § 95 — 1—15[sic] is clear and unambiguous. ‘Before any civil action is brought for publication of a libel[,] the plaintiff shall, at least ten (10) days before instituting any such action, serve notice in writing on the defendant.’” Id. (quoting Miss.Code Ann. § 91-1-5(1)).
¶ 12. Brocato cited Florida’s interpretation of its similarly worded notice statute.[4] Id. (citing Ross v. Gore, 48 So.2d 412, 415 (Fla.1950)). Like the Mississippi Supreme Court, the Florida Supreme Court held its “statute provides, in clear and unmistakable terms, that ... the giving of notice in writing is a condition precedent to suit.” Ross, 48 So.2d at 415.
¶ 13. A year after Brocato, the United States District Court for the Northern District of Mississippi relied on Brocato to hold “[t]he plain language of the statute requires that plaintiff must serve a demand for retraction before any civil action is filed against a newspaper[, radio, or television station] for libel.” Pannell v. Associated Press, 690 F.Supp. 546, 549 & n. 2 (N.D.Miss.1988). The district court expressly rejected the plaintiff’s argument “that the retraction statement affects only plaintiffs’ claim for punitive damages, not any claim for actual damages.” Id. at 549. Instead, Judge Senter reinforced Brocato’s holding: “Other jurisdictions with similar retraction statutes hold that a retraction demand is an absolute prerequisite to a cause of action for libel.” Id. (citing Nelson v. Associated Press, 667 F.Supp. 1468, 1473-75 (S.D.Fla.1987) (applying Fla. Stat. Ann. § 770.01)). See also Wisc. Stat. Ann. § 895.05(2) (also requiring written notice “[b]efore any civil action shall be com menced on account of any libelous publication in any newspaper, magazine or periodical”).
II. The Sufficiency of Pre-Suit Notice
¶ 14. Cases that have addressed section 95-1-5(1) have only considered whether notice was given at all, not whether the content of the notice was sufficient. Brocato, 503 So.2d at 242; Holmes v. TV-3, Inc., No. W91-0109 (BR), 1993 WL 328365, at *5-6 (S.D.Miss. May 27, 1993); Pannell, 690 F.Supp. at 548-50; Etheridge v. N. Miss. Commc’ns, Inc., 460 F.Supp. 347, 349 (N.D.Miss.1978). The Hudsons advocate that we apply the substantial-compliance approach adopted by the Mississippi Supreme Court when interpreting the Mississippi Tort Claims Act’s pre-suit notice statute, Mississippi Code Annotated section 11—46—11 (1)—(2) (Rev.2002). But even under a substantial-compliance approach, we find for notice to be sufficient it must specify the statements allegedly to be false and defamatory. And, in order to specify the statements, the notice must identify the alleged false and defamatory statements with sufficient particularity to enable the broadcaster to investigate the allegations and issue a retraction, if necessary.
A. Substantial-Compliance Approach
¶ 15. The Hudsons rely on the substantial-compliance approach, adopted by the Mississippi Supreme Court in Lee v. Memorial Hospital at Gulfport, 999 So.2d 1263, 1266-67 (¶¶9-13) (Miss.2008), to argue their pre-suit notice letter was sufficient to enable them to bring a defamation *434 suit against WLOX based on the “overall tenor” of the two telecasts. In Lee, the supreme court held a pre-suit notice letter substantially complied with section 11-46-11(2), even though it did not include the plaintiff’s place of residence at the time of injury. Id. at 1267 (¶¶ 11-13).[5] But the supreme court cautioned that Lee “should not be interpreted as holding that the required elements do not need to be explicitly stated in the notice of claim.” Id. at (The supreme court was careful to clarify: “While there may be some cases in which the claimant’s residence is a critical issue, clearly it was not in this case.” Id. at (¶ 12) (emphasis added).
¶ 16. The supreme court found the letter’s content—which included the circumstances which brought about the plaintiffs injury, the date and place her injuries occurred, the extent of her injuries, her medical damages, and all persons known to be involved—“fulfilled the purpose of the statute.” Id. (¶ 13). This purpose is “to insure that governmental boards, commissioners, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon as possible when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies.” Id. at 1266 (¶ 9) (citation omitted). So under Lee’s substantial-compliance approach, a statutorily required element can be missing fi’om a pre-suit notice only when (1) the missing element is not a “critical issue,” and (2) the notice fulfilled the purpose of the statute. Id. at 1267 (¶¶ 12-13).
1. Section 95-1-5(1)
¶ 17. Applying the Lee approach, we ask: Does section 95-1-5 have any statutorily required elements that neither touch on critical issues nor are necessary to fulfill the statute’s purpose? See Lee, 999 So.2d at 1266-67 (¶9, ¶12). In contrast to section 11-46-11, section 95-1-5 has only two elements that must be provided in the notice—“[ (1) ] the article, broadcast or telecast, and [ (2) ] the statements therein ... allege[d] to be false and defamatory.” Miss.Code Ann. § 95-1-5(1) (emphasis added). According to the Hud-sons and the dissent, only the first element is necessary for substantial compliance. Under this view, as long as the telecast is merely identified, a plaintiff may bring a defamation suit based on any content and inferences from that telecast. We disagree with this approach and find the second explicit element of section 95-1-5 touches on a critical issue and is necessary to fulfill the purpose of the statute.
¶ 18. The allegedly false and defamatory statements are a critical issue because they comprise an essential element of a defamation claim. See Lee, 999 So.2d at 1267 (¶ 12). To establish a defamation claim, the Hudsons had to prove the following elements:
(1) a false and defamatory statement concerning them;
(2) unprivileged publication by WLOX to third party;
(3) fault amounting to at least negligence on part of the publisher, WLOX; and
*435 (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.
Franklin v. Thompson, 722 So.2d 688, 692 (¶ 12) (Miss.1998) (citations omitted); cf. Chalk v. Bertholf, 980 So.2d 290, 296 (¶¶ 11-12) (Miss.Ct.App.2007) (looking to four elements of a defamation claim to determine whether plaintiffs sufficiently pled defamation under Mississippi Rule of Civil Procedure 8).
¶ 19. Like the MTCA’s pre-suit notice statute, the purpose of the defamation notice statute is to “encourage[ ] ... corrective action.” See Lee, 999 So.2d at 1266 (¶ 9).
This opportunity, given by the statute, to correct inadvertent errors prior to suit is, in our opinion, no more than fairly and justly commensurate with the opportunity to make the errors. Thus, if by retraction, the damage is completely off-set or so mitigated as not to warrant suit, the newspaper or periodical will oft-times be saved the annoyance and expense of answering the suit, as well as the opprobrium consequent even to an unfounded suit for libel.
Pannell, 690 F.Supp. at 550 (quoting Ross, 48 So.2d at 415); see also Nelson, 667 F.Supp. at 1475 (holding Florida’s pre-suit notice “statute is designed to allow a defendant the opportunity to be put on notice so as to take necessary steps to mitigate potential damages and perhaps avoid precisely the type of litigation now before the Court”). For a notice to fulfill this purpose-to have the broadcaster correct errors in order to mitigate damages and/or avoid suit-the notice has to communicate what information was erroneous. How else would a potential defendant have notice of the particularly defamatory portions of its telecast to investigate for retraction purposes?
2. The Hudsons’ Letter
¶20. The Hudsons assert their pre-suit notice letter sufficiently notified WLOX to make a reasonable investigation about the veracity of the “overall tenor” of both telecasts. But that is not what the Hudsons’ letter stated. Nor is it what section 95-1-5(1) requires. As discussed, the statute requires more than mere notice of what telecasts are defamatory. It also requires notice of what specific statements within the broadcast are erroneous and defamatory. Miss.Code Ann. § 95-1-5(1).
¶21. The Hudsons’ letter to WLOX specified the stories were untrue because the stories indicated the Hudsons were not licensed and had been sued for defective work. WLOX was not on notice to correct any other errors in the stories. Thus, we reject the Hudsons’ “overall tenor argument—as well as the position taken by the dissent—because it ignores the second requirement of section 95-1-5(1) and seeks to presents claims to the jury of which WLOX had no pre-suit notice.
B. Sufficiently Particular Notice
¶ 22. Because we hold compliance with section 95-1-5(1) requires the pre-suit notice letter to both specify the telecasts and the allegedly false and defamatory statements, we clarify what it means to “specify[ ] ... the statements.” Because Brocato looked to Florida’s interpretation of its notice statute for guidance, we find Florida law instructive on when a notice letter is sufficiently specific. Brocato, 503 So.2d at 243 (relying on Ross, 48 So.2d at 415); see also Pannell, 690 F.Supp. at 549-50 (discussing Nelson, 667 F.Supp. 1468; Ross, 48 So.2d at 415; Hulander v. Sunbeam Television Corp., 364 So.2d 845 (Fla.Ct.App.1978); Orlando Sports Stadium, Inc. v. Sentinel Star, 316 So.2d 607 (Fla.Ct.App.1975)).
*436 ¶ 23. Florida requires “the best possible notice[.]” Nelson, 667 F.Supp. at 1474. And determining what qualifies as best possible notice may depend on how the alleged defamatory statement was published. In Nelson, the court held a pre-suit notice letter was insufficient for only referencing the general content of a written news story because the plaintiff had the written stories in her possession “and could have specifically referred to them and quoted them verbatim in her notice[.]” Id. But in Edward L. Nezelek, Inc. v. Sunbeam Television Corp., 413 So.2d 51, 55 (Fla.Dist.Ct.App.1982), the Florida Court of Appeals rejected the argument that a complaint for defamation based on an oral statement in a television broadcast had to set out the statement verbatim. Instead, it found “it is sufficient that the plaintiff set out [in the complaint] the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory.” Id.
¶ 24. Here, the allegedly defamatory statements were broadcast. Applying the best-possible-notice standard from Nelson and Nezelek, the Hudsons’ notice letter did not have to specify the allegedly false and defamatory statements verbatim. But best possible notice under section 95-1-5(1) did require the Hudsons to identify the substance of the spoken statements “with sufficient particularity to enable [WLOX] to determine whether the publication was defamatory.” Nezelek, 413 So.2d at 55; see Hulander, 364 So.2d at 846-47 (holding pre-suit letter demanding a “retraction of any allegations or innuendoes [sic] or intimidations [sic] of criminal conduct on the part of [the plaintiff!” had “failed to advise the broadcasting company with particularity as to which statements were false ... [because n]owhere in the retraction notice were the allegations, innuendos or intimations identified”).[6]
¶ 25. The Hudsons’ pre-suit letter specified the false and defamatory substance of the broadcast was that the Hudsons were not and had never been licensed contractors in Mississippi and that they had been sued for defective work. Thus, the trial court correctly held the pre-suit notice was sufficient for the Hudsons to bring their defamation claim against WLOX based on these statements. And indeed, the Hud-sons brought this exact claim, alleging in their complaint: “Defendant, on June 21, 2006, telecast a story indicating that [the Hudsons] were not licensed contractors, that [they] had been sued for defective work and that [they] had never been licensed contractors in Mississippi.” The trial court correctly denied WLOX summary judgment, even though the Hudsons admitted the statements in their complaint — “[the Hudsons] were not licensed contractors”; “they had been sued for defective work by Mr. Wayne Failey”; and “they had never been licensed contractors in Mississippi” — were not literally used in the telecasts.
¶ 26. The dissent argues the trial court erred by looking to the language in the pre-suit notice letter and not the complaint to instruct the jury. But we point out the language from Jury Instruction D-6(a)(1) tracks the allegations in the complaint, which are almost identical to those in the pre-suit notice letter. The only difference between the pre-suit notice letter and the allegations in complaint is that the letter stated the telecasts “claim[ed]” the Hud-sons had been sued for defective work and were not licensed, while the complaint alleged the telecasts “indicat[ed]” the Hud- *437 sons had been sued and were not licensed. We find this minor distinction immaterial.
¶ 27. Also, in finding reversible error in Jury Instruction D-6(a)(l), the dissent does not mention Jury Instruction P-23, in which the trial court instructed the jury: “Plaintiffs are not required to prove that they used the exact language ‘were not license contractors’ or ‘had been sued for defective work by Wayne Fairley.’” Instead, “they are only required to demonstrate that the Defendant made statements substantially the same [.]” (Emphasis added). See Boone v. Wal-Mart Stores, Inc., 680 So.2d 844, 845 (Miss.1996) (citation omitted) (instructing appellate courts to review the jury instructions “as a whole” to determine if they “fairly — although [maybe] not perfectly — announce the applicable primary rules of law”). Because the jury was instructed it could look beyond the exact language to determine if language substantially the same as the three statements was published and was false and defamatory, we find the trial court correctly instructed the jury on the scope of the Hudsons’ defamation claim, based on the substance of their pre-suit notice letter and their complaint.
¶ 28. Likewise, we find the trial court correctly held the pre-suit notice letter was insufficient for the Hudsons to sue based upon “any allegations or innuendos or intimations” from the telecasts that were not substantially similar to those provided in their pre-suit notice letter. Hulander, 364 So.2d at 847. To hold otherwise would render meaningless section 95-1—5(1)’s language requiring the plaintiff “specify! ] • • • the statements therein, which he alleges to be false and defamatory.” Miss.Code Ann. § 95-1-5(1).
CONCLUSION
¶ 29. The supreme court has held compliance with 95-1-5(1) is required in order to sue a television station for defamation and because specifying the statements alleged to be false and defamatory is required for substantial compliance with section 95-1-5(1). Thus, it stands to reason that failure to specify certain statements or allegations prevents being able to prove their publication, falsity, and defamatory nature in ensuing defamation suit — particularly in this case, where the complaint alleged the telecasts were false and defamatory for the very same reasons as the pre-suit notice letter.[7] Because we find no reversible error in the trial court’s instructions, we affirm the jury’s verdict in favor of WLOX.
¶ 30. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J., AND RUSSELL, J.

. Brocato v. Miss. Publishers Corp., 503 So.2d 241, 243 (Miss.1987).

. Miss.Code Ann. § 95-1-5(1) (Rev.2004).

. Mississippi Code Annotated section 95-1-5 states in its entirety:
(1) Before any civil action is brought for publication, in a newspaper domiciled and published in this state or authorized to do business in Mississippi so as to be subject to the jurisdiction of the courts of this state, of a libel, or against any radio or television station domiciled in this state, the plaintiff shall, at least ten (10) days before instituting any such action, serve notice in writing on the defendant at its regular place of business, specifying the article, broadcast or telecast, and the statements therein, which he alleges to be false and defamatory-
(2) If it appears upon the trial that said article was published, broadcast or telecast in good faith, that its falsity was due to an honest mistake of the facts, and there were reasonable grounds for believing that the statements in said article, broadcast or telecast were true, and that within ten (10) days after the service of said notice a full and fair correction, apology and retraction was published in the same edition or corresponding issues of the newspaper in which said article appeared, and in as conspicuous place and type as was said original article, or was broadcast or telecast under like conditions correcting an honest mistake, and if the jury shall so find, the plaintiff in such case shall recover only actual damages. The burden of proof of the foregoing facts shall be affirmative defenses of the defendant and pled as such.
(3)This section shall not apply to any publication concerning a candidate for public office made within ten (10) days of any primary, general or special election in which such candidate's candidacy for or election to public office is to be determined, and this section shall not apply to any editorial or to any regularly published column in which matters of opinions are expressed.

. Florida Statutes Annotated section 770.01 (2011) states:
Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.
(Emphasis added).

. Section 11-46-11(2) specifically requires:
Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

. In Nezelek, the Florida Court of Appeals receded from Hulander to the extent its holding barred single amendment of pre-suit notice letter. Nezelek, 413 So.2d at 57.

. Cf. Chalk, 980 So.2d at 298-299 (¶ 18-19) (holding the plaintiffs failed to plead a sufficient defamation claim under Rule 8 partly because the complaint did not "provide any substance regarding the allegedly slanderous words”).