William Henry PITTMAN, Jr.

v.

**GANNETT RIVER STATES PUBLISH-
ING CORPORATION, d/b/a the
Clarion Ledger.**

No. J92–0624(L)(C).

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 1, 1993.

Thomas Lowe, William Pittman, Jr., Jackson, MS, for plaintiff.

Leonard Van Slyke, Alston, Rutherford, Tardy & Van Slyke, Jackson, MS, for defendant.

MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Gannett River States Publishing Corporation, d/b/a The Clarion Ledger, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff William Henry Pittman, Jr. has responded to the motion and the court, having considered the memoranda of authorities together with attachments submitted by the

parties, is of the opinion that defendant's motion should be granted.

## Claims

In this case, the plaintiff alleges that he was defamed in two articles published by the defendant newspaper.[1] The first article was published on June 14, 1991 in the Clarion Ledger, and stated, "Prosecutors had claimed the men paid for oral sex from prostitutes working for William Henry Pittman Jr., of Rankin County...." The second article, issued on May 28, 1992, stated, "Prosecutors had claimed prostitutes, ranging in ages from 14 to 17, worked for Pittman." Plaintiff claims he was never a manager or pimp, although he admits that he knew these prostitutes, had sex with several of them on numerous occasions, and photographed or video-taped the girls in the nude.

## Case History

On December 22, 1988, two teenage girls, Candi Sevier and Melanie Boyd, were arrested by Jackson police on charges of soliciting prostitution. Police questioned the girls concerning Pittman, who was at the time under investigation by Jackson police and the United States Customs Agency on suspicion of involvement in a prostitution ring and child pornography. Both girls admitted that they knew Pittman, and Boyd informed police that plaintiff had taken nude photographs of her. Armed with this and other information obtained from Sevier and their prior investigations, law enforcement officials obtained a search warrant for Pittman's home. During their search of the home, police discovered many pictures, both still and videotaped, of plaintiff and other minor girls engaged in various types of intercourse. Other photos showed Pittman smoking marijuana with several of these girls. Pittman was ultimately arrested for possession of marijuana after officers found marijuana and other controlled substances in the home.

As a result of these arrests, police uncovered a prostitution ring consisting of at least five minors. The investigation of this ring culminated in the December 1989 indictment of Lavon Gressett, Teresa Gressett, Kim DeWeese and Stephen Joe Ray for their operation of the prostitution ring. Though he was not named as a defendant, the indictment recited that these four individuals were "aided and abetted by each other and by William Henry Pittman, Jr."

Pittman was subsequently indicted in both state and federal court. In March, 1989, plaintiff was indicted in this court under a two-count indictment charging him with transporting a minor across state lines to engage in sexual activity and distributing controlled substances to minors. That indictment was followed in July 1989 by an indictment of Pittman in the Circuit Court of Rankin County on five counts of photographing or videotaping minors engaged in sexual conduct. Following pleas of guilty to both indictments, Pittman was sentenced to forty-one months on the federal charges and five concurrent twenty-year sentences on the state counts.

In 1992, Pittman attempted to withdraw both of his prior pleas. He was unsuccessful in vacating his federal plea, and served over three years in the federal correctional facility in Atlanta. However, plaintiff's state court plea, and the sentence imposed based on that plea, were vacated based upon the state court's finding that Pittman had not been fully apprised of the consequences of his plea. The Clarion Ledger's May 1992 report concerning the court's ruling contained one of the statements upon which this action is based.

The Pittman and Gressett indictments and the police investigation of these cases attracted substantial media attention, particularly after Pittman's testimony and other evidence implicated several Jackson lawyers and businessmen as customers of the prostitution ring. As a result of the information acquired, a number of the Jackson-area lawyers and businessmen were indicted on charges of engaging in unnatural intercourse.

1. This federal diversity suit originated in the United States District Court for the Northern District of Georgia. The case was subsequently transferred to this court, where the complaint was amended and ultimately consolidated with a similar case that was already pending in this court.

Those charges were ultimately dismissed in June 1991, upon a state court's ruling that statute upon which the indictments were based was unconstitutional. The Clarion Ledger's report on the dismissal of the indictments against these lawyers contained the second asserted defamatory remark.

## Analysis

■■■■ Citing various authorities, defendant argues that plaintiff's claim is without merit and that publication of these statements is insufficient to establish a defamation claim. Under Mississippi law, a simple defamation claim requires proof of a false and defamatory statement concerning the plaintiff, an unprivileged publication to a third party, fault amounting to at least negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or the existence of some special harm caused by the publication. *Eselin–Bullock & Assocs. v. National General Ins. Co.*, 604 So.2d 236, 241 (Miss.1992) (citing *Blake v. Gannett Co., Inc.*, 529 So.2d 595, 602 (Miss.1988)). Further, in a case such as this, where the plaintiff is a "vortex" public figure,[2] in order to establish a claim of defamation, the plaintiff must also prove actual malice by the defendant. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094 (1967). To show malice, plaintiff must demonstrate by "clear and convincing" evidence that defendant acted with knowledge that the statement was false,

or with reckless disregard as to its truth or falsity. *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). In the case at bar, neither party seriously contends that the statements at issue were not defamatory.[3] They do, however, dispute whether the statements were false and whether The Clarion Ledger acted maliciously in reporting the statements. The Clarion Ledger vigorously argues that the statements that Pittman was the leader of a prostitution ring[4] were substantially true,[5] and that in any event, their publication was certainly not motivated by malice. Pittman, on the other hand, insists both that the statements were false and that they were maliciously reported.

Although Pittman admits that he photographed and had engaged in sexual relations with the prostitutes, he denies he was their leader, employer or manager in the prostitution business. As to his specific involvement in the girls' activities, Pittman has acknowledged that he once dropped off one of the girls at a local lawyer's office and that she prostituted herself to the lawyer, and he has admitted that on one occasion he picked up one of the girls after a call. But as to both instances, he denies that he had any knowledge at the time that the purpose of the girls' meetings was prostitution or that he had any involvement in the dates. Pittman admits that he occasionally set the girls up with friends, but he maintains that this was simply a courtesy and was not done for the

2. The parties agree that Pittman was a "vortex" public figure.

3. A defamatory communication is one which tends to harm the reputation of another as to lower him in the estimate of the community. *Gulf Publishing Co., Inc. v. Lee*, 434 So.2d 687, 694 (Miss.1983); *Restatement 2d: Torts*, § 559.

4. It is clear that both of the articles at issue identified the reporter's source of information, attributing the statements to prosecutors and explicitly reciting that "prosecutors had claimed" that Pittman was the leader of a prostitution ring. It is undisputed that this statement was true; court records establish without doubt that prosecutors had, in fact, claimed that Pittman was a manager or leader of a prostitution ring. But that does not establish truth in the context of a claim for defamation. When one person repeats a statement that is attributed to another, he

cannot establish truth merely by showing that the statement was made by the other person. Instead, he must prove the truth of the defamatory charges he repeated under the rule that one who repeats slander or libel from another endorses it. *Restatement 2d: Torts*, § 581 comment e; *Theiss v. Scherer*, 396 F.2d 646, 648 (6th Cir.1968). Accordingly, the analysis on the issue of falsity is not on whether the prosecutor actually made this statement, but on whether the statement made by the prosecutor was true. *See, e.g., Foster v. T.B.S., Inc.*, 844 F.2d 955, 959 (2d Cir.1988) (defendant could not escape liability for false, defamatory statement simply because it repeated statement of third party).

5. For defamation purposes, the statement must be substantially true, but need not be literally true. *Blake v. Gannett Co.*, 529 So.2d 595, 603 (Miss.1988); *Restatement 2d: Torts*, § 581 comment f.

purpose of financial gain. Plaintiff claims that he never received any money from the girls or paid any money to these girls for prostitution.

In addition to this proof which he claims supports his contention that the statements were false, Pittman has presented evidence which he maintains demonstrates that defendant knew or should have known, before it published the articles at issue, that the statements were false. For example, he has presented the testimony of several of the prostitutes, who claimed that Pittman was never paid for any of their services.[6] He notes, as well, that he was never charged or prosecuted for activities involving prostitution. Finally, he points out that he originally filed this defamation lawsuit after the first alleged defamatory article in June 1991 but prior to the May 1992 article. From that, he reasons that defendant was aware before May 1992 that the statement was false, or was at the very least on notice of Pittman's contention that the statement was false which notice should have evoked further investigation by Clarion Ledger reporters prior to publication of the May 1992 article.

Whether the evidence submitted by Pittman on the issues of malice and falsity is sufficient to create genuine issues of material fact is questionable. Though Pittman denies he was a leader or manager of the prostitution ring, he has admitted significant involvement with these prostitutes and the evidence relating to defendant's alleged malice, if sufficient to withstand summary judgment, is only marginally so. But the court need not resolve these issues, for even assuming that a jury could reasonably find, based on plaintiff's evidence, that the subject statements were false (i.e., the statements of the prosecutor), and that The Clarion Ledger acted with malice in reporting the statements,

plaintiff's claim is nevertheless due to be dismissed because, in the court's opinion, defendant was privileged to make these statements.

As the court has indicated, one who repeats a statement attributed to another cannot avoid liability merely by showing that the statement was made by the other person because, under the republication rule of defamation, one who repeats slander or libel from another endorses it.[7] An exception to this republication rule is the official proceedings privilege, under which the "publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." *Brocato v. Mississippi Publishers Corp.*, 503 So.2d 241, 244 (Miss.1987) (quoting *Restatement 2d: Torts*, § 611).[8] It has been recognized that literal adherence to the republication rule might sap the vigor from public debate, and dissuade the press from reporting important information due to the threat of legal action. To eliminate this chilling effect, virtually every jurisdiction recognizes a privilege for fair and accurate media accounts. The privilege is not intended as merely a convenient method of shielding the press from tort liability, but instead is intended to ensure that information is made available to the public concerning what occurs in official proceedings.

Whether the privilege applies in a particular case is generally a matter for the court to decide. *Restatement 2d: Torts*, § 619. To be protected by the privilege, the statements must be attributable to an official document or proceeding. This does not mean that each quote or statement must be specifically attributed to an official document

---

6. Felicia Presley, one of the prostitutes, stated at a preliminary hearing at which Clarion Ledger reporters were present that Pittman did not give her money for any of the dates he may have set up for her. At that hearing, Denise Mulligan, another of the prostitutes, stated that Pittman never arranged any dates for her and that she never paid him any of the money she received for her dates.

7. *See supra* note 4.

8. The official proceedings privilege is equally applicable to invasion of privacy actions. *Bichler v. Union Bank & Trust Co. of Grand Rapids*, 745 F.2d 1006, 1010 (6th Cir.1984); *Restatement 2d: Torts*, § 652G. Accordingly, plaintiff's false light claim is also due to be dismissed, since defendant was privileged to make the challenged remarks.

or proceeding. Rather, it is necessary only that, when considered in context, it is clear that the article is quoting, paraphrasing or otherwise drawing upon official documents or proceedings. *Dameron v. Washington Magazine, Inc.,* 779 F.2d 736, 739 (D.C.Cir.1985). After fully examining the articles involved in this case, there is little doubt that the remarks were drawn from official records or proceedings.

■ The June 1991 statement was published in a report concerning a state court's dismissal of unnatural intercourse charges against a number of Jackson lawyers. As is customary, the article contained a brief summary of historical information designed to acclimate the reader, which included two references to Pittman:

> Prosecutors had claimed the men paid for oral sex from prostitutes working for William Henry Pittman, Jr., of Rankin County, who is now in federal prison.

> \*　\*　\*　\*　\*　\*

> Pittman is serving a three-year, five-month sentence in federal prison in Atlanta after pleading guilty in 1989 to charges of flying a minor to Mississippi and supplying her and other teenage girls with drugs.

The topic of the May 1992 article was the decision of a state court judge to vacate Pittman's prior guilty plea to state charges and the sentences imposed against Pittman based on that guilty plea. The article also mentioned Pittman's federal conviction, detailing the nature of the charges and the length of his sentence:

> Pittman, 46, remains in custody because of guilty pleas to separate federal charges of flying a minor to Mississippi to have sex and supplying her and other teenage girls with drugs.

Pittman has served three years and three months at the Atlanta federal prison and faces two more months . . .

\*　\*　\*　\*　\*　\*

Prosecutors had claimed prostitutes, ranging in age from 14 to 17, worked for Pittman. The case received national attention when several local attorneys and businessmen were accused under a little-used statute with having had unnatural sex with the girls. Charges against the eight men were dismissed in June 1991.

While neither of these articles cites a source for any of these statements, including those of which Pittman complains, it is readily apparent from a review of the articles that the remarks at issue were gleaned from official statements or proceedings, including Pittman's indictments and his sentencing hearing in federal court. There was substantial discussion and testimony during Pittman's 1989 federal sentencing hearing concerning Pittman's involvement with the girls in the prostitution ring, much of which was devoted, in particular, to the government's claim that Pittman was a manager or leader of the ring.[9] Logic would suggest that the sentencing hearing was the likely source of the defendant's remarks since prosecutors alleged exactly what The Clarion Ledger reported.[10]

In addition to the specific discussion of Pittman's alleged involvement in the prostitution ring during Pittman's federal sentencing hearing, similar allegations were made in numerous other public documents, including police investigation reports, arrest reports, and the indictment of Gressett, Deweese and others for running a prostitution ring, any of which were potential sources of defendant's remarks. Defendant reported on each of these matters and certainly was aware of the

---

9. This proof was presented by the government in an effort to secure an increase in Pittman's sentence under federal sentencing guidelines which provide for an enhancement where it is demonstrated that the defendant is an organizer, manager or ringleader. Ultimately, the sentencing judge ruled that the enhancement provision of the sentencing guidelines were inapplicable, though he indicated that there was ample proof to indicate that Pittman was a manager of prostitutes.

10. It is difficult to doubt the defendant's reliance on the official statements made during the sentencing hearing when one considers that other information in both articles was obviously derived from the sentencing hearing, specifically the statements concerning Pittman's federal sentencing and incarceration.

underlying allegations. All of these matters, including the Gressett indictment, the indictments against Pittman himself and his subsequent guilty pleas and the vacating of the state pleas and, of course, the return of and subsequent dismissal of the indictments against the Jackson lawyers, had two common linkages: the prostitution ring and Pittman. These cases were all related and each was part of a larger scandal. Accordingly, under these facts the cases must be considered jointly. The scandal was the subject of intense public attention, which culminated in numerous media reports, including newspaper articles, of the cases and investigations. The public was aware that numerous official hearings and proceedings had taken place prior to the publication of the challenged articles, and readers, the intended beneficiaries of the privilege, would logically have realized that previously-published articles and official proceedings were the sources for the alleged defamatory remarks. Under these circumstances, the court concludes that defendant's publication of the challenged statements was privileged.

 Even though statements are subject to this privilege, the privilege can be lost if it is abused. To show abuse of the privilege, the plaintiff is required to demonstrate that the defendant's report was inaccurate, incomplete or unfair.[11] To determine if a report is fair and accurate,

> [i]t is not necessary that it be exact in every immaterial detail or that it conform

to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.

> Not only must the report be accurate, but it must also be fair. Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it. . . . [12]

*Doe v. Doe*, 941 F.2d 280, 289–90 (5th Cir. 1991) (quoting *Restatement 2d: Torts*, § 611 comment f).

 In this case there is no question that the reports were accurate. The parties agree that the prosecutors did contend that Pittman was a manager or ringleader of prostitutes, which is substantially the same as defendant's statements that the prostitutes worked for Pittman. Pittman contends, though, that the statements were not a fair and complete account of the proceeding, since defendant did not report that he denied the charges. However, defendant was not purporting to report the actual official charges against Pittman, but instead was merely recounting the prosecutor's statements.[13]

---

11. The privilege announced in § 611 permits a person or entity to publish reports of official proceedings or actions or even a public meeting that deals with a matter of public concern. These reports are allowed even if the author knows it contains false and defamatory statements. The privilege is only abused if it is shown that the author or publisher failed to do what was necessary to insure a fair, complete and accurate abridgment of the proceeding. *Restatement 2d: Torts*, § 611 comment b. This is to be distinguished from other qualified privileges which are lost upon showing of malice, in the traditional sense. *See Sumner Stores of Mississippi v. Little*, 192 So. 857, 187 Miss. 310 (1940). The malice or fault required to lose this privilege is failing to do what is reasonably necessary to insure fair and accurate reporting.

12. "[F]or example a report of the discreditable testimony in a judicial proceeding and a failure

to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article [could convey an erroneous impression to those who hear or read it]. The reporter is not privileged under § 611 to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to anyone, nor to indict expressly or by innuendo the veracity or integrity of any of the parties." *Doe v. Doe*, 941 F.2d 280, 289–90 (5th Cir.1991) (quoting *Restatement 2d: Torts*, § 611 comment f).

13. The court would note that even if the articles were reporting on the official charges against Pittman, the failure to include Pittman's denial of the charges would not necessarily, in and of itself, have rendered the articles unfair or incomplete, since a denial is only a small factor in determining whether the entire article is fair.

Pittman also argues that because he sent letters to defendant advising that the charges were false and even filed a lawsuit to that effect, and since defendant was aware that prostitutes had testified in related proceedings that Pittman never received money from their prostitution, defendant should have known that the allegations were untrue. He reasons, therefore, that in light of the information which was clearly available to it, defendant abused whatever privilege it may have had. Plaintiff's argument, however, overlooks a crucial distinction between the analysis applicable to determining whether a defamation claim has been. proved and whether there has been an abuse of the privilege. Even if plaintiff's assertions are accepted they suggest only that he was not a manager or ringleader and relate only to the truthfulness, or lack thereof, of the prosecutor's statements. However, what is important in considering whether the privilege has been abused is not whether the underlying charges were true, but whether there was a fair and accurate account of the proceeding. Where as here, accuracy is established, the relevant inquiry is whether defendant's report is fair and complete, not whether the underlying statements are true.

Certainly, fairness required that defendant consider any additional information gathered after the sentencing hearing, but only if any such information tended to affect the fairness of the official proceeding or report. Thus, if information was subsequently obtained by defendant which suggested that prosecutors had retreated from their earlier position, the fact of that information could impugn the overall fairness of the report. Here, however, plaintiff has submitted no evidence that prosecutors ever abandoned their position that Pittman was a ringleader or manager. In this vein, the court would note that even though the enhancement provisions were rejected by the sentencing judge as inapplicable to Pittman's crimes, the court did indicate that there was ample proof to suggest that he was a manager of prostitutes. Plaintiff, therefore, cannot be heard to complain that the failure to report that the enhancement rejection made the publication incomplete or unfair, since the court rejected the enhancement and not the prosecutor's contention that Pittman was a ringleader or manager of prostitutes.

In summary, plaintiff's evidence does not indicate the existence of any genuine issue of material fact regarding the fairness of the defendant's reports. As such, the court concludes that the official proceedings privilege was not abused.

Based on the foregoing, it is ordered that Gannett River States Publishing Corporation's motion for summary judgment is granted.

ORDERED.