**Jerry HEGWOOD, Plaintiff**

v.

**COMMUNITY FIRST HOLDINGS, INC., d/b/a Picayune Item, Defendant.**

**Cause No. 1:06cv1105–LG–JMR.**

United States District Court,
S.D. Mississippi,
Southern Division.

March 12, 2008.

Matthew L. Devereaux, Carey R. Varnado, Montague, Pittman & Varnado, Hattiesburg, MS, for Plaintiff.

Malissa Wilson Winfield, John C. Henegan, Leann W. Nealey, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

LOUIS GUIROLA, JR., District Judge.

BEFORE THE COURT is [40] Defendant Community First Holdings, Inc., d/b/a *Picayune Item's* Motion for Summary Judgment. Plaintiff Jerry Hegwood initiated this action for defamation and gross negligence against Community First for an article reporting his arrest for home repair fraud. Community First argues the article was either true or substantially true, is protected by the official report privilege, and Mississippi does not recognize gross negligence on the basis of printed, non-commercial words. The Court has considered the briefs, record, and relevant legal authority. The motion is granted.

### FACTS AND PROCEDURAL HISTORY

Hegwood was a construction contractor who restored and remodeled homes. Following an indictment, the Pearl River County Sheriff's Department arrested him on July 5, 2006, on a charge of home repair

fraud. The Sheriff's office published an arrest report, concerning his and other arrests, and disseminated it to local media outlets, including the *Picayune Item*. This is a newspaper published and distributed in Picayune, Mississippi. The report read in pertinent part:

> Deputies with the Pearl River County Sheriff's Department arrested Jerry Bubba Hedgwood [sic], Jr. [,] . . . on the charge of Home repair fraud. Hedgwood [sic] will go to houses in reference to doing work and sign a contract and request a deposit. He will then not return to do the work that was to be done. Anyone who has had a problem with this contractor or any other is asked to contact the Pearl River County Sheriff's Department.

(Def.'s Mot. Summ. J. Ex. E at 2). It is undisputed that this report referred to Hegwood.

Community First is a media company which owns the *Picayune Item*. Relying on the report from the Sheriff's Department, the newspaper published an article entitled, "Deputies make several arrests." (Def.'s Mot. Summ. J. Ex. F at 2). The article read in pertinent part:

> In the last few weeks the Pearl River County Sheriff's Department has made several arrests.
>
> According to a press release from the department. . . .
>
> . . . .
>
> Deputies arrested Jerry Bubba Hedgwood[,][sic] Jr.[,] . . . with home repair fraud. Hedgwood [sic] would go to houses in reference to doing work and sign a contract and requesti [sic] a deposit. Hedgwood [sic] would not return to do the work. Anyone who has similar problems with this contractor or any other is asked to contact the Pearl River County Sheriff's Department.
>
> . . . .

All above suspects were taken to the Pearl River County Jail and booked on their respective charges.

*Id.* at 2–3.

Hegwood attempted to get a retraction, claiming that he had returned and done work, and the issue in the criminal case was whether he completed the work he had begun. After Community First refused, Hegwood filed the instant action.

## DISCUSSION

*STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:*

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue has to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–26, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

*DEFAMATION*

■ To create liability for defamation, there must be: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Johnson v. Delta–Democrat Pub'g Co.*, 531 So.2d 811, 813 (Miss.1988). As stated previously, Community First argues that the statement is either true or substantially true and is privileged by the "official proceedings privilege." *See Brocato v. Miss. Publishers Corp.*, 503 So.2d 241, 244 (Miss. 1987).

■ Whether a certain privilege applies is "generally a matter for the court to decide." *Pittman v. Gannett River States Publ'g Corp.*, 836 F.Supp. 377, 382 (S.D.Miss.1993). A newspaper has a qualified privilege to republish statements found "in a report of an official action or proceedings or of a meeting open to the public that deals with a matter of public concern ... if the report is accurate and complete or a fair abridgment of the occurrence reported." *Brocato*, 503 So.2d at 244 (quoting Restatement (Second) of Torts § 611 (1977)).

For example, Brocato filed a defamation action against the *Clarion Ledger* for material published in that newspaper. The article in question was based on a document ("Examples of Typical Complaints") prepared by the Mississippi Ethics Commission given to the state Legislature. *Brocato*, 503 So.2d at 244. The Mississippi Supreme Court held that "the drafting and publication of the 'Examples of Typical Complaints' by the Chairman of the Mississippi Ethics Commission and its executive director was an 'official action.'" *Id.* Therefore, "the newspaper had a privilege to republish the statements found in that report." *Id.* at 245. The only question was whether or not the statements published by the newspaper were an accurate and complete description of the report. *Id.* "Because the ... article was an admittedly accurate and complete description of this official action" the court sustained summary judgment in the newspaper's favor. *Id.*

■ In the instant case, Hegwood responds only that the *Picayune Item* article is neither accurate nor a fair abridgment of the Sheriff's press release. The Court is not called on to decide whether the Sheriff's press release is an official report nor whether the subject article is attributable to this press release.

In *Pittman* the court examined whether an article was a "fair and accurate" republication. *Pittman*, 836 F.Supp. at 382. Pittman sued the *Clarion Ledger* for libel following two articles which suggested that a prostitution ring worked for him. *Id.* at 379. This accusation was a republication of prosecutors' statements found in indictments, a federal sentencing hearing, police investigative reports, and arrest reports. *Id.* at 383. Relying on *Brocato*, the court held the official report privilege applied. *Id.* at 382. To determine if the privilege was abused, the court noted:

> To determine if a report is fair and accurate.... [i]t is enough that it conveys to the persons who read it a substantially correct account of the proceedings. Not only must the report be accurate, but it must also be fair.... It is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it.

*Id.* at 384. The court held the article was accurate, because "prosecutors did contend that Pittman was a manager or ringleader of prostitutes, which is substantially the same as defendant's statements that the

prostitutes worked for Pittman." *Id.* The court found the articles to likewise be a fair and complete assessment of the prosecutors' statements. *Id.*

In the instant case, Hegwood takes issue with the following statement in the *Picayune Item:* "Hedgwood [sic] would not return to do the work." The corresponding statement in the Sheriff's Department press release read, "He will then not return to do the work that was to be done." The Court holds that the Defendant's statement is an accurate account of the Sheriff's report. The former is a substantially correct account of the latter. Both statements accuse Hegwood of not returning to the homes to do work for which he was paid.

Nevertheless, Hegwood argues that by deleting the phrase "that was to be done," Community First "changed the nature and perception of the article." (Pl.'s Memo. Opp. at 5). Specifically, Hegwood argues that the newspaper's rendition implies that he did not ever return to the homes to do any work. The Court holds the additional phrase "that was to be done" was mere surplusage in this context. The Sheriff's press release does not indicate, either through this deleted phrase or elsewhere, that Hegwood ever returned or did any work. Therefore, Defendant's statement that he "would not return to do the work" is a fair abridgment of the Sheriff's report. It is the Sheriff's press release, not Community First's article, which left the impression that Hegwood never returned and did any work for the money. Because the Defendant's article is a fair and accurate republication of an official report, Community First's article is protected by the official report privilege. Therefore, Community First is entitled to summary judgment on the defamation claim.

*GROSS NEGLIGENCE*

Finally, Hegwood claims that the subject article amounted to gross negligence, which entitles him to punitive damages. As proof, he points to the fact that Community First twice refused to print a retraction, despite being informed of the inaccuracy of the subject article. Community First argues it had no duty to print the retraction, and a claim of negligence will not lie for non-commercial printed speech.

To the extent that this claim is for an award of punitive damages for defamation, Community First is entitled to judgment as a matter of law. Because the article was privileged, neither compensatory nor punitive damages may be recovered on the defamation claim.

■ To the extent that this is a distinct claim for the failure to retract, Hegwood does not point to, and the Court cannot find, any duty under Mississippi law to retract. By statute, newspapers domiciled and published in, or authorized to do business in Mississippi are given the *"opportunity* to make corrections prior to suit." Miss.Code Ann. § 95–1–5 (2008) (emphasis added). If the article was published in good faith, its falsity was due to an honest mistake, there were reasonable grounds for believing the statements in the article were true, and "within ten (10) days after the service of [notice from the plaintiff that the statements are false and defamatory] a full and fair correction, apology and retraction was published … the plaintiff … shall recover only actual damages." Miss. Code Ann. § 95–1–5(2) (2008). While this statute creates an "affirmative defense" to punitive damages in a libel action, it cannot be said to create a duty to retract. *Id.* Indeed retraction is one of several elements a defendant must prove in this affirmative defense. One effect of the statute would no doubt be to encourage retractions, but it cannot be said to demand them. Therefore, Community First is en-

368

titled to summary judgment on the gross negligence claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Community First Holdings, Inc.'s Motion for Summary Judgment [40] is **GRANTED.** A separate judgment will be entered herein in accordance with this Order as required by FED.R.CIV.P. 58.