# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01158-COA

FAITH ABERCROMBIE                                                                APPELLANT

v.

JONATHAN ABERCROMBIE                                                            APPELLEE

DATE OF JUDGMENT:            07/26/2017
TRIAL JUDGE:                 HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:   LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      DIANNE HERMAN ELLIS
ATTORNEYS FOR APPELLEE:      CHASE FORD MORGAN
                             ANDREW ARMAN MIRI
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED IN PART; VACATED AND
                             REMANDED IN PART - 08/20/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.    Faith Abercrombie appeals from an order of the Lamar County Chancery Court that denied her motion to set aside a prior judgment establishing custody of and visitation with Faith's son, Reed.[1]  Faith argues that the chancery court's judgment and subsequent orders are void because the court lacked jurisdiction to make an initial custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).  Miss. Code Ann. § 93-27-201 (Rev. 2013).  She also challenges an award of attorney's fees to her ex-husband, Jonathan Abercrombie, and rulings related to Jonathan's child support payments.

_____

[1] We use a fictitious name to protect the privacy of the minor child.

¶2.     While this appeal was pending, the chancellor was presented with evidence that Faith and Jonathan initially obtained custody of Reed by fraud.  Reed's biological mother is a relative of Faith, but the identity of Reed's biological father has not been established.  At Reed's birth, Jonathan falsely claimed to be Reed's biological father by signing Reed's birth certificate and an acknowledgment of paternity.  Faith and Jonathan then raised Reed as their own, and Faith later adopted Reed in Louisiana, apparently with the consent of Reed's biological mother.  The Abercrombies' adoption petition also falsely represented that Jonathan was Reed's biological father.

¶3.     After the parties' fraud was revealed, the chancellor ordered them to appear at a hearing to show cause why they should not be held in civil contempt or subject to other sanctions.  Jonathan appeared, but Faith did not.  After the hearing, the chancellor vacated the parties' divorce judgment because it had been obtained by a fraud on the court.  The chancellor also found both parties in contempt and ordered the Department of Child Protective Services (DCPS) to take custody of Reed.  However, as far as this Court is aware, Reed remains in Faith's custody in Louisiana.

¶4.     In this appeal, we conclude that the chancellor correctly denied Faith's motion to set aside the court's prior judgments and orders regarding custody and visitation.  The chancery court's jurisdiction to make an initial custody determination was established in three prior judgments, including one that was affirmed on appeal and two that Faith did not appeal.  Therefore, that issue is now res judicata.  As to the remaining issues in this appeal, we hold that the award of attorney's fees must be vacated and may be reconsidered on remand, and

2

we hold that Faith waived any issue with respect to child support by failing to designate an adequate record and by failing to appeal prior orders of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶5.     In 2014, Jonathan filed a complaint for divorce in the Lamar County Chancery Court. He alleged that he had lived in Mississippi for more than six months prior to filing the complaint after he and Faith separated in Louisiana.  Jonathan also alleged that Mississippi was Reed's home state under the UCCJEA.  Reed was four years old at the time.  Faith was personally served with a summons and a copy of the complaint, but she failed to enter an appearance or answer the complaint.  In April 2015, the chancery court granted Jonathan a divorce on the ground of habitual cruel and inhuman treatment.  As Jonathan's complaint had requested, the court awarded Faith physical custody of Reed and granted Jonathan visitation. The court also ordered Jonathan to pay child support of $280 per month.

¶6.     Faith filed a timely pro se notice of appeal, which was her first appearance in the case. In her pro se appellate brief, Faith asserted that the chancery court lacked jurisdiction because Jonathan had not lived in Mississippi for six months prior to filing the complaint and because Louisiana was Reed's home state under the UCCJEA.  She also claimed that Jonathan obtained the divorce by fraud.  However, in June 2016, this Court affirmed the judgment of the chancery court because there was no evidence in the record to support the allegations in Faith's brief. *Abercrombie v. Abercrombie*, 193 So. 3d 680, 683 (¶12) (Miss. Ct. App. 2016).

¶7.     While her first appeal was pending, Faith filed a pro se "Motion for Relief from Judgment" in the chancery court.  In her motion, Faith asserted that the chancery court's

judgment should be set aside because the court lacked jurisdiction to determine custody or visitation and because Jonathan had obtained the divorce by fraud. In July 2016, Jonathan filed a complaint for contempt and modification of visitation. Faith, still proceeding pro se, filed an answer and a second motion for relief from the original judgment of divorce.

¶8.    In August 2016, the chancellor entered an "Agreed Order/Final Judgment." In the judgment, the chancellor found that the chancery court had "jurisdiction over the parties and the subject matter" and denied Faith's motion for relief from the judgment. The chancellor also found that Jonathan's request for modification of visitation was "well taken," and the court's judgment established a new visitation schedule based on an agreement by the parties. The chancellor specifically noted that the judgment was a "Final Judgment" under Rule 54 of the Mississippi Rules of Civil Procedure.

¶9.    In October 2016, Jonathan filed a new complaint for contempt and for modification of visitation. Faith was served with a summons and a copy of the complaint but failed to answer or appear at the subsequent hearing. On December 1, 2016, the chancellor entered an order finding that the court had continuing, exclusive jurisdiction over the parties and the subject matter. The chancellor also found that Faith was in contempt for refusing to comply with the visitation order and for failing to appear in court. The chancellor then awarded Jonathan $1,047 in attorney's fees and costs and ordered that Faith should be incarcerated; however, the chancellor also ordered that Faith's incarceration would be stayed if she complied with the court's visitation order and paid Jonathan's attorney's fees and costs. The chancellor set the matter for review on January 17, 2017.

¶10.    Both Jonathan and Faith appeared in court on January 17, 2017.  Faith appeared pro se, while Jonathan was represented by counsel.  Both parties testified under oath, and neither raised any objection to the court's jurisdiction.  After the hearing, the chancellor entered an order finding that the court had exclusive, continuing jurisdiction over the parties and the subject matter.  The chancellor lifted the stay of incarceration, and Faith was jailed for her contempt and continued refusal to allow Jonathan to exercise visitation.  The chancellor also set a review hearing for January 30, 2017.  On January 30, 2017, Faith and Jonathan again appeared in court, and the chancellor ordered that Faith should be released from jail.

¶11.    On March 9, 2017, the chancellor entered an order on various issues.  The chancellor found that the court had exclusive, continuing jurisdiction over the parties and the subject matter.  The chancellor noted that both parties had given sworn testimony on January 30 and neither raised any objection to the court's jurisdiction.  The chancellor explained that Faith and Jonathan had reached another agreement with respect to custody and visitation, which the chancellor approved.  Faith would continue to have physical custody of Reed, the parties would have joint legal custody, and Jonathan would have specified visitation.  The chancellor also ruled that any child support arrearage owed by Jonathan was "satisfied" and that Jonathan's obligation to pay child support was "suspend[ed]" due to Faith's refusal to allow him to exercise visitation.  Finally, the chancellor reduced Jonathan's award of attorney's fees and costs to $345 payable in installments of $25 per month.

¶12.    Faith subsequently hired a lawyer, and on April 14, 2017, she filed a "Motion to Dismiss and Set Aside for Lack of Jurisdiction."  In her motion, Faith argued that all prior

5

judgments and orders touching on Reed's custody and visitation were void because the chancery court never had jurisdiction to make an initial custody determination.

¶13. The chancellor denied Faith's motion after concluding that her arguments were waived or barred by the doctrine of judicial estoppel. The chancellor also "reinstated" Jonathan's child support obligation and ordered him to pay $241 per month. Finally, the chancellor awarded Jonathan attorney's fees of $500 "due to [Faith's] contrary legal positions taken and judicial estoppel." Faith subsequently filed a notice of appeal.

¶14. On June 21, 2018, while this appeal was pending, Faith disclosed to her attorney that Jonathan was not Reed's biological father and that her adoption of Reed was fraudulent. Specifically, Faith told her attorney that Reed's biological mother was a distant cousin of Faith, that Jonathan falsely claimed to be Reed's biological father and signed Reed's birth certificate, that Faith subsequently adopted Reed, and that the adoption petition falsely represented that Jonathan was Reed's biological father.

¶15. Faith's attorney informed Jonathan's attorney of what Faith had told her, and Jonathan confirmed the basics of the fraud. Counsel for both Jonathan and Faith promptly informed the chancellor of the true circumstances of Reed's birth and adoption. The chancellor appointed a guardian ad litem (GAL) for Reed and ordered Faith and Jonathan to show cause why they should not be held in contempt for their fraud. The chancellor later reset the show-cause hearing for December 6, 2018.

¶16. Faith's attorney informed this Court of the developments in the chancery court, and a panel of this Court entered an order directing the parties to file supplemental briefs

6

addressing the questions whether the proceedings in the chancery court would render this appeal moot in whole or in part or affect this Court's jurisdiction and whether the appeal should be stayed pending further proceedings in the chancery court. *Abercrombie v. Abercrombie*, 2017-CA-01158-COA (Miss. Ct. App. Oct. 31, 2018). The parties subsequently filed briefs addressing those issues.

¶17. Faith did not appear at the December 6 show-cause hearing in the chancery court, although her attorney was present. Jonathan testified that in 2010 Faith told him that a relative of hers (Ashley) was pregnant and did not want to keep her child, but Faith wanted to adopt the child. Ashley and Faith agreed that Jonathan should sign the child's birth certificate as the father and Faith would then adopt the child with Ashley's consent. Jonathan testified that he did not know the identity of the biological father but reluctantly went along with Ashley and Faith's plan. Ashley lived in Louisiana but moved in with Jonathan and Faith during her pregnancy, and Reed was born in Hattiesburg. Jonathan signed Reed's birth certificate as the father. Ashley then moved back to Louisiana, and Jonathan and Faith kept Reed in Mississippi. Jonathan testified that he "was told" that Faith's brother "contacted the biological father's family and told them the baby was stillborn." However, Jonathan was not in the room when that phone call was made. Faith and Jonathan later moved to Louisiana, and Faith adopted Reed. The adoption petition falsely represented that Jonathan was Reed's biological father. Jonathan testified that he had been unable to determine the identity of Reed's biological father, and he had not had any contact with Ashley since Reed's birth.

¶18. The GAL reported that as part of her investigation she had talked to Faith by phone.

Faith told the GAL that Ashley was in North Carolina and working as a prostitute when she became pregnant. Faith told the GAL that she did not know the identity of Reed's biological father. According to Faith, Ashley had five other children, all of whom had ended up in the custody of state child welfare agencies.

¶19. On December 7, 2018, the chancellor vacated the original judgment of divorce because it had been obtained by fraud on the court. The chancellor also found Jonathan and Faith in contempt and fined each of them $100. Finally, the chancellor ordered DCPS to take immediate custody of Reed and issued a writ of habeas corpus directing that Reed be delivered to DCPS. The chancellor directed that copies of his order should be sent to the clerk and judge of the Louisiana court that granted Reed's adoption and to the district attorney for investigation of possible criminal charges.

¶20. Faith filed a motion for reconsideration, again alleging that the chancery court lacked jurisdiction. The chancellor set a review hearing for December 18, 2018. Faith failed to appear at the review hearing. Faith's attorney reported to the court that Faith had told her that she and Reed were on vacation in Disney World. The chancellor subsequently denied Faith's motion for reconsideration. As far as this Court is aware, Reed remains in Faith's custody in Louisiana.

¶21. Faith also filed a motion in this Court in which she asked this Court to stay execution of the chancery court's December 7, 2018 order vacating the judgment of divorce and the writ of habeas corpus issued by the chancery court. A panel of this Court denied Faith's motion. The panel recognized that the evidence of the parties' fraud on the court, which

came to light after this appeal was taken, "was not the subject of the judgment that Faith challenges in this appeal." *Abercrombie v. Abercrombie*, 2017-CA-01158-COA (Miss. Ct. App. Jan. 14, 2019). The panel ruled that the chancery court had jurisdiction to address that issue precisely because it was not the subject of this appeal. *Id.*

## ANALYSIS

### I. Jurisdiction

#### A. The Judgment on Appeal

¶22. Faith argues that the chancery court lacked subject matter jurisdiction to make an "initial child custody determination" under the UCCJEA, Miss. Code Ann. § 93-27-201, because Mississippi was not Reed's home state. She further argues that all subsequent orders touching on Reed's custody and visitation are void due to lack of jurisdiction. However, we conclude that Faith is barred from re-litigating this issue, which has been decided in at least three prior final judgments.[2]

¶23. This Court recently addressed a similar issue in *Burgess v. Williamson*, 270 So. 3d 1031 (Miss. Ct. App. 2018). In *Burgess*, the father (Williamson) filed a petition for custody;

---

[2] Although the chancery court set aside the original divorce judgment based on fraud on the court, we conclude that this issue is not moot for at least three reasons. First, even after setting aside the divorce judgment, the chancery court has continued to exercise jurisdiction with respect to Reed's custody, and Faith continues to contest the court's jurisdiction to do so. Second, Faith argues that all of the chancery court's prior judgments and orders touching on Reed's custody and visitation must be set aside for lack of jurisdiction, including prior orders finding her in contempt and awarding attorney's fees. However, the chancery court's December 7, 2018 order only set aside the original divorce judgment, not all of the court's judgments and orders. Third, if we agreed with Faith that the chancery court lacked jurisdiction, we would also be compelled to reverse and render the award of attorney's fees that we address below in Part II.

the mother (Burgess) filed an answer and a counterclaim for custody; the chancery court found that it had jurisdiction and awarded custody to Williamson; and Burgess did not appeal from the final judgment. *Id.* at 1033, 1037 (¶¶4-6, 18). In a subsequent contempt proceeding, Burgess argued that the chancery court lacked subject matter jurisdiction under the UCCJEA to enter its original judgment determining the child's custody. However, this Court held that the doctrine of res judicata barred Burgess's argument. *Id.* at 1035-36 (¶¶17-18). We explained that "[o]nce a case is litigated to a final judgment, and no appeal is taken, a party who participated in the original litigation cannot collaterally attack the court's jurisdiction in a later proceeding." *Id.* at 1036 (¶17); *see also Phillips v. Kelley*, 72 So. 3d 1079, 1084 (¶18) (Miss. 2011) ("[S]ubject matter jurisdiction . . . may not be attacked collaterally."); *Dep't of Human Servs. v. Shelnut*, 772 So. 2d 1041, 1045 (¶13) (Miss. 2000) ("The principles of res judicata apply to questions of jurisdiction . . . whether the questions relate to jurisdiction of the subject matter or jurisdiction of the parties.").

¶24. The same reasoning applies here.[3] Indeed, whereas *Burgess* involved just one prior final judgment, this case had been litigated to a final judgment *three times* before Faith filed the motion that is the subject of this appeal. In each of those prior judgments, the chancellor found that the chancery court had jurisdiction over the parties and the subject matter, and

---

[3] Contrary to the dissent's assertions, *Burgess* is not materially distinguishable. In *Burgess*, this Court addressed Burgess's argument "that the chancery court lacked jurisdiction to enter the original . . . final judgment awarding custody and support," and we held that her claim was "barred by the doctrine of res judicata." *Burgess*, 270 So. 3d at 1035 (¶17). We noted that even the issue of subject matter jurisdiction is subject to the doctrine of res judicata. *Id.* at 1036 (¶17). In doing so, we simply reiterated what the Supreme Court had already held in both *Phillips* and *Shelnut*, *supra*.

10

each time the court's judgment was affirmed on appeal or was not appealed. *First*, the April 2015 final judgment of divorce specifically found that the court had jurisdiction over the parties and the subject matter. Faith appealed, but this Court affirmed the final judgment of the chancery court because there was no evidence in the record to support Faith's assertion that the chancery court lacked jurisdiction. *Abercrombie*, 193 So. 3d at 683 (¶¶10, 12). *Second*, in June 2015, Faith filed a motion for relief from judgment in which she attacked the chancery court's jurisdiction. The chancellor denied Faith's motion in an August 2016 final judgment that (a) again specifically found that the court had continuing, exclusive jurisdiction and (b) clearly noted that it was a "Final Judgment" for purposes of Mississippi Rule of Civil Procedure 54. Faith did not appeal from that final judgment. *Third*, in March 2017, the chancellor entered an order on issues of custody, visitation, child support, and attorney's fees. That order again found that the court had continuing, exclusive jurisdiction. Faith did not appeal that ruling either; instead, she waited more than thirty days and then filed yet another motion attacking the chancery court's jurisdiction.

¶25.    Because this case has been litigated to a final judgment three times previously, the chancery court's jurisdiction to enter its original judgment and initial determination of custody is res judicata. *Phillips*, 72 So. 3d at 1084 (¶18); *Shelnut*, 772 So. 2d at 1045 (¶13); *Burgess*, 270 So. 3d at 1035-36 (¶¶17-18). Therefore, the chancellor correctly ruled that Faith's challenge to the court's jurisdiction is barred.[4]

---

[4] Although the chancellor denied Faith's motion based on the somewhat related concepts of waiver and judicial estoppel, we may affirm on alternative grounds. *See Brocato v. Miss. Publishers Corp.*, 503 So. 2d 241, 244 (Miss. 1987).

## B.     The Dissent

¶26.    The dissenting opinion is based entirely on evidence offered at a hearing that was held in the chancery court more than a year after this appeal was filed, and the dissent's ultimate conclusion is that the chancellor should have taken additional steps when he entered his order "vacat[ing] the original judgment of divorce in this case." *Post* at ¶40. However, that order was also entered over a year after this appeal was taken, and it is not the subject of this appeal. Indeed, as discussed above, a panel of this Court previously recognized that the chancellor retained jurisdiction to address the parties' fraud on the court *precisely because* that issue "was not the subject of the judgment that Faith challenges in this appeal."

¶27.    In *this appeal*, Faith challenges the chancery court's July 26, 2017 order denying her April 14, 2017 motion to dismiss and set aside for lack of jurisdiction. In that motion, Faith did not allege any fraud on the court, and there was no evidence of fraud on the court when the chancellor entered his ruling. Indeed, although the dissent primarily addresses the validity of the Louisiana adoption, there was nothing to indicate any problem with the Louisiana adoption when the chancellor entered the judgment that is now before us on appeal. The only challenge that the chancellor addressed in that ruling was Faith's claim that the court's *initial* child custody determination was void because Mississippi was not Reed's home state at the time of the original judgment of divorce. For the reasons explained above, Faith's attack on the court's jurisdiction to make an initial custody determination was barred by res judicata because the case had already been litigated to a final judgment three times.[5]

---

[5] To be clear, we agree with the dissent that the issue of subject matter jurisdiction "cannot be waived." However, it can be finally decided—and beyond re-litigation—when,

Therefore, the chancellor properly denied Faith's motion.

¶28. Thus, the dissent is attacking an order that simply is not before us on appeal. The order that the dissent attacks was entered more than a year after this appeal was taken, and there has been no attempt to appeal it. Nowhere does the dissent say that the chancellor committed any error in the order that is actually the subject of this appeal.[6]

¶29. One final point: the dissent accuses this Court and the chancellor of somehow "usurp[ing] jurisdiction from Louisiana" and "infringing upon [Louisiana's] authority to govern its own citizens." *Post* at ¶48. Nothing could be further from the truth. As far as this Court is aware, no custody proceeding is pending in any Louisiana court, and no judge in Louisiana has attempted to make any custody decision pertaining to Reed. If such an action is ever filed in Louisiana, the chancellor may communicate with the Louisiana judge, the chancellor may relinquish *continuing* jurisdiction over Reed's custody, and the Louisiana court may assume jurisdiction. *See* Miss. Code Ann. §§ 93-27-110 & -202 (Rev. 2018); La. Stat. Ann. §§ 13:1810 & :1815 (Rev. 2007). That may be an appropriate course in the future, but it has nothing to do with the ruling that is before this Court in this appeal. The ruling that is before this Court in this appeal simply rejected Faith's challenge to the chancery court's jurisdiction to make an *initial* child custody determination.

as in this case, it has been resolved in multiple successive final judgments.

[6] Although we have considered the post-appeal proceedings in the chancery court and the chancellor's post-appeal rulings, we have done so only (1) to rule on Faith's motion to stay proceedings in the chancery court and to stay execution of the chancellor's orders (which we denied, *see supra* ¶21) and (2) to determine whether this appeal is moot (we hold that it is not, *see supra* n.2).

13

## II. Attorney's Fees

¶30. Faith argues that the chancellor erred by awarding Jonathan attorney's fees for defending against her motion to dismiss for lack of jurisdiction. The chancellor awarded Jonathan $500 in attorney's fees. However, the chancellor did not find that Jonathan was unable to pay his attorney's fees or that Faith was in contempt.[7] Nor did the chancellor make any finding that Faith's motion was frivolous or that it was filed for any improper purpose. Finally, the chancellor did not cite the Litigation Accountability Act, Miss. Code Ann. § 11-55-1 et seq. (Rev. 2012), Rule 11 of the Mississippi Rules of Civil Procedure, or any other basis for an award of attorney's fees. Because the chancellor did not provide a legal basis for the award of attorney's fees or make any finding that Faith's most recent motion was frivolous, we conclude that the award should be vacated and remanded for further consideration. *See Tunica County v. Town of Tunica*, 227 So. 3d 1007, 1027-31 (¶¶49-60) (Miss. 2017) (vacating and remanding award of attorney's fees where trial court failed to provide a legal basis for the award).[8]

---

[7] In a prior order, the chancellor awarded attorney's fees to Jonathan after finding that Faith was in contempt for denying Jonathan visitation. However, the chancellor did not find Faith in contempt in its most recent order. Indeed, during the hearing, the chancellor specifically noted that there were no pending petitions for contempt or requests for attorney's fees based on contempt.

[8] When the chancellor previously awarded Jonathan $500 in attorney's fees, he was not aware of Jonathan's role in the fraudulent adoption and fraud on courts in two states. The chancellor may take these subsequent revelations into account in determining whether an award of fees is still necessary or appropriate. *See O'Neill v. O'Neill*, 501 So. 2d 1117, 1119 (Miss. 1987) ("It is the function of the chancellor to weigh all of the facts and assess the circumstances and to award attorney's fees accordingly."); *Hartley v. Hartley*, 317 So. 2d 394, 395-96 (Miss. 1975) (stating that in domestic cases the chancellor has "wide authority in setting appropriate attorney's fees after carefully considering the facts of each

### III. Child Support

¶31. In an order entered on January 18, 2017, the chancellor "suspend[ed]" Jonathan's child support payments based on Faith's "refusal to allow [him] to exercise visitation." On March 9, 2017, the chancellor found "[t]hat any and all child support currently due and owing, or any arrearages of child support by Jonathan . . . [were] satisfied." In addition, the chancellor again ruled Jonathan's child support payments were "suspend[ed]" due to "Faith's refusal to allow [him] to exercise visitation." On appeal, Faith argues that the chancellor erred by forgiving Jonathan's past-due child support and by suspending child support as a sanction for her failure to comply with the visitation requirements of the court's orders.

¶32. Faith is correct that child support obligations "vest in the child as they accrue" and, once vested, "cannot be modified or forgiven by the courts." *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1991). However, it is unclear what—if any—past-due child support was actually forgiven as a result of the court's orders. The reason this is unclear is that Faith failed to designate the transcripts of any relevant hearings as part of the record on appeal.[9] In addition, Faith did not designate any pleadings relevant to the issue of child support.[10] It was Faith's duty as the appellant to designate the necessary transcripts, pleadings, and

---

case").

[9] When the appellant designates less than the entire record for inclusion in the record on appeal, the appellant is required to file a statement of the issues that the appellant intends to raise on appeal. M.R.A.P. 10(b)(4). However, Faith failed to comply with this requirement. Therefore, Jonathan would not have known that child support was at issue in the appeal until Faith filed her opening brief.

[10] Indeed, it does not appear that Faith filed any pleading raising this issue.

information for inclusion in the record on appeal. *Pennington v. Dillard Supply Inc.*, 858 So. 2d 902, 903-04 (¶¶4-7) (Miss. Ct. App. 2003). Because Faith failed to provide an adequate record to review this issue, we are unable to consider it and cannot reverse the chancery court on this point. *Id.*

¶33. Moreover, we also conclude that this issue is not properly before us on appeal. The rulings on child support that Faith complains about were contained in the January 18, 2017 and March 9, 2017 orders of the chancery court. The March 9 order was appealable, but Faith did not appeal it. Instead, she waited more than thirty days and then filed a new motion to set aside and dismiss for lack of jurisdiction. In that motion, she did not even mention child support. The chancellor's order denying that motion is the subject of this appeal. In that order, the *only* action that the chancellor took with respect to child support was to *reinstate* child support. By failing to appeal the chancellor's March 9 order, Faith waived any right to challenge the chancellor's finding that any arrearage was "satisfied" or the chancellor's suspension of child support. *See Burgess*, 270 So. 3d 1036-37 at (¶¶20-21) (holding that failure to appeal a prior judgment waived the right to appeal issues decided in that judgment); *Chasez v. Chasez*, 957 So. 2d 1031, 1037 (¶14) (Miss. Ct. App. 2007) (same).

## CONCLUSION

¶34. The chancery court's jurisdiction to make an initial custody determination is res judicata because it was decided in three prior judgments, including one that was affirmed on appeal and two others that Faith did not appeal. Therefore, Faith is barred from re-litigating that issue, and we affirm the chancery court's denial of Faith's motion to set aside and

16

dismiss for lack of jurisdiction. We vacate the award of attorney's fees and remand for further consideration of that issue. Finally, we hold that the issue of child support payments is not properly before us and that we are unable to consider it on appeal.

¶35. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McCARTY, J., DISSENTING:**

¶36. The revelation of the extensive fraud that both parents purportedly committed destroys jurisdiction because we have learned for a fact that this case is centered in Louisiana. Since subject matter jurisdiction cannot be waived and cannot be achieved through deception or fraud, I believe we are required to reverse for lack of jurisdiction.

¶37. Our Uniform Child Custody Jurisdiction and Enforcement Act decrees that "[n]o infant shall be adopted to any person if either parent, having been summoned, shall appear and object thereto before the making of a decree for adoption . . . ." Miss. Code Ann. § 93-17-7 (Rev. 2014). The Act establishes that both parents are necessary parties to an adoption proceeding. *Id*. We know for a fact that this prerequisite of the Act was not complied with because the slow reveal that the natural father was not made aware of (much less provided consent for) the child's adoption.

¶38. This was fraud, as even the parties have now belatedly conceded. "When consent for a supposedly 'uncontested' adoption is gained by intentionally concealing the identity of a known natural parent from the chancellor, a fraud is perpetrated upon the court." *Doe v.*

17

*Smith*, 200 So. 3d 1028, 1030 (¶1) (Miss. 2016). There was fraud in *Doe* too, where the natural mother falsified her son's birth certificate to facilitate his adoption, and this "deception caused the court to grant an adoption to a third party based on false, material representations." *Id*.

¶39. Such a fraud thwarted the whole purpose of the Act and the court's role in following it because "an intentional fraud aimed solely to circumvent a natural parent's statutorily mandated consent to an adoption undermines the effective administration of justice." *Id*. at 1033 (¶17).

¶40. Because the adoption is void based upon fraud, neither of those two people who committed the fraud should have standing. "[A] lack of standing robs the court of jurisdiction to hear the case." *In re Estate of Ivy*, 121 So. 3d 226, 243-44 (¶88) (Miss. Ct. App. 2012). Therefore, "any ruling on a case brought by someone who lacked standing is void ab initio." *Id*. When a divorce decree is invalidated on grounds of fraud related to child custody and adoption, it follows that all subsequent custody determinations should be deemed void ab initio. We have previously held that "when a divorce is invalidated, all matters decided as a result of the divorce decree are null and void and should be brought in another hearing." *Clark v. Clark*, 43 So. 3d 496, 502 (¶25) (Miss. Ct. App. 2010). Such matters to be reversed include the award of "alimony, *child custody*, and child support." *Id*. (emphasis added). When the chancery court vacated the original judgment of divorce in this case, as it was required to do, it should have also vacated all custody determinations stemming from the divorce.

18

¶41. Our inquiry should end there. A court cannot find that it has jurisdiction over a custody dispute between two adoptive "parents" when the validity of the adoption itself has been shown to be fraudulent. For our courts to assert jurisdiction over a child born to a Louisiana resident, "adopted" by pretense in Louisiana, and who has resided in Louisiana at all times following the so-called adoption, would directly contradict the very purpose of the Act. The UCCJEA, now nearly universal, was enacted among the separate states in part to prevent exactly this forum-shopping.

¶42. The fact that the issue of jurisdiction arises at this late date does not matter because subject matter jurisdiction cannot be waived. *Ridgeway v. Hooker*, 240 So. 3d 1202, 1208 (¶23) (Miss. 2018). Nor can subject matter jurisdiction be acquired through the passage of time because a party may raise the issue of subject matter jurisdiction at any point, including on appeal. *Pierce v. Pierce*, 132 So. 3d 553, 560 (¶14) (Miss. 2014). Our Supreme Court has long been blunt that we must examine whether we have jurisdiction because "[s]ubject matter jurisdiction, which is succinctly defined as the authority of a court to hear and decide a particular case, depends on the type of case at issue, and we have the primary duty [to determine sua sponte] whether a particular case lies within our jurisdiction." *Common Cause of Miss. v. Smith*, 548 So. 2d 412, 414 (Miss. 1989).

¶43. The United States Supreme Court agrees this is a core duty of courts. "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider issues [sua sponte] that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). This can be frustrating to the Judiciary, as the Court points out, because

"[t]he objections [to jurisdiction] may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Id*. As a result "months of work on the part of the attorneys and the court may be wasted." *Id*.

¶44. This is unfortunately one such case—where months of effort by the lawyers and the court system end up with a dismissal. Yet we must reverse, and since when we do not have jurisdiction, we should not rule. *Accord Common Cause of Miss.*, 548 So. 2d at 418 (dismissing the appeal sua sponte for lack of jurisdiction because contempt was criminal, not civil); *Dudley*, 979 So. 2d at 693 (finding a lack of jurisdiction sua sponte due the notice of appeal being filed untimely); *Cotton v. Veterans Cab. Co.*, 344 So. 2d 730, 731 (Miss. 1977) (finding a lack of jurisdiction sua sponte because there was not a final judgment); *Bolivar v. Waltman*, 85 So. 3d 335, 339 (¶14) (Miss. Ct. App. 2012) (finding a lack of jurisdiction because necessary parties were not included).

¶45. Our prior rulings related to this point do not result in a procedural bar either. In the case addressed *supra*, we reviewed the nonpayment of child support, not custody, making the issue of jurisdiction under the UCCJEA inapplicable. *Burgess v. Williamson*, 270 So. 3d 1031, 1035 (¶16) (Miss. Ct. App. 2018). More importantly, the mother's challenge of subject matter jurisdiction was deemed res judicata because she "answered [the] original petition for custody and child support, she filed a counterclaim, the case proceeded to trial, and the chancery court entered a final judgment." *Id*. at 1036 (¶18). The mother in this case took none of these procedural steps taken by the mother in the prior litigation.

¶46.    Even if the mother's claim was barred under the doctrine of res judicata, the law recognizes three exceptions to allow a party to litigate the issue of subject matter jurisdiction after a judgment has been rendered:

> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

Restatement (Second) of Judgments § 12 (1982).

¶47.    In the present case, the subject matter was so plainly beyond Mississippi's jurisdiction that it was an abuse of authority for the chancery court to hear the case. The only connections between the child and Mississippi are that he was born in Mississippi and his "adoptive" father currently resides in Mississippi. Both points fail to secure jurisdiction: the child has lived in Louisiana since shortly after his birth, and because the validity of the "adoption" has been brought into question, we cannot assume jurisdiction based on this fact.

¶48.    For Mississippi to assert jurisdiction over this case would be to usurp jurisdiction from Louisiana, infringing upon the State's authority to govern its own citizens. The child in question was born to a Louisiana resident, was allegedly "adopted" in Louisiana, and domiciled in Louisiana at all times following the "adoption."

¶49.    Further, the Abercrombies' actions of defrauding and concealing facts from the

chancery court deprived the court of the ability to properly make an adequate and informed decision regarding whether it had jurisdiction to hear the case. With the truth concerning the alleged adoption now unearthed, it is clear that our State does not and could not have jurisdiction over the matter.

¶50. Our courts do have continuing jurisdiction over the misrepresentations the parties made in this case because they were submitted to our courts and made within our State. *See* M.R.C.P. 11. It is a felony to "willfully and corruptly swear, testify, or affirm falsely to any material matter . . . in any court of law *or equity* . . . ." Miss. Code Ann. § 97-9-59 (Rev. 2014) (emphasis added); *see also* Miss. Code Ann. § 97-9-61 (Rev. 2014) (penalty of perjury in a non-felony trial not to exceed ten years). While this case should be dismissed for lack of jurisdiction, that does not mean the repeated fraud on our court system should go without penalty.

¶51. For these reasons I must respectfully dissent.